540 So.2d 1330 (1989)
Willie CAROL, Michael Smith and Lester Williams
v.
STATE of Mississippi.
No. 58212.
Supreme Court of Mississippi.
March 15, 1989.
Milford A. Weaver, Lucedale, A. Wellington Gibbs, Gulfport, for appellants.
Mike Moore, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Willie Carol, Michael Smith and Lester Williams have appealed their conviction in the circuit court of George County of burglary of a dwelling and sentence to ten years imprisonment. Because there was a conflict in the defense of Carol and Smith and the circuit court overruled defense motion to appoint separate counsel, we reverse and remand their convictions. Because there was insufficient evidence to support a conviction of Williams, we reverse and render his judgment of conviction.

FACTS
The State Department of Corrections has a George County Work Center, which in 1985 had 75 prisoners. Three of the inmates were Willie Carol, Michael Smith and Lester Williams. On Monday, November 25, 1985, these three were assigned on a work detail to J.P. Holland, a city employee of Lucedale, to pick up trash alongside a highway outside the city limits of Lucedale, and work back towards town. Holland did not stay with the men, however, as they worked. Holland put the men out at 9:00 that morning near the city dump area.
When Holland got back from lunch that day these three men were missing. When he called the Work Center to report them missing, he saw them walking out of the woods near the county vehicle barn.
Dayton Whites, a physician, and his wife Mrs. Suzanne Whites, had a residence about a mile out of town off the highway along which these three convicts were picking up trash. Mrs. Whites and the rest of the family were gone most of the day. That evening Mrs. Whites' daughter told her somebody had gotten into their jewelry. They then discovered that jewelry, cash, a camera, and numerous items of personal *1331 property worth several thousands of dollars were missing. The theft was then reported. Eventually, almost all the stolen property was recovered.
Eugene Howell, sheriff of George County, learned during the week that these three convicts had been on a work detail on the highway near the Whites' residence. On Friday, November 29, Sheriff Howell, and deputies C.H. Davis and C.A. Burnett went to the Center, and questioned all three. Smith and Williams denied any knowledge of the crime. Carol, after some questioning, said he did know something, saying something to the effect "I knew I couldn't lie to ya'll." At that point, according to Howell and Davis, Carol was read the Miranda warnings.
The officers continued to question Carol, who agreed to take the officers to locate some of the stolen property. Carol took the officers into the woods where some of the property was recovered.
The officers then returned to the Center and took all three, Williams, Smith and Carol into the sheriff's office. They all signed waiver of rights forms, acknowledging Miranda warnings. After these were signed, only Carol agreed to make a statement. Carol made the following written statement:
I left the Road to go use the woods and after I came back the two boy were gone. And I started calling there [sic] names and then one of them threw a stick in the road. And then they came down the hill with a bag and I ask them were did they get that stuff from and he said just don't tell no one and we will give you some of the money.
s/Willie Carol
Witness:
Eugene Howell, C.A. Burnett, C.H. Davis
Charles David Turner, the director of the Center, returned to the Center around 6:00 p.m. that Friday, and learned the sheriff had taken the three into custody. Turner called a meeting of the inmates and told them that in fifteen minutes he was going to make a complete search of the Center, but in the meantime if the stolen property was produced, "that would more or less clear them up." A few minutes later several inmates brought a plastic bag containing various items of jewelry into his office.
At some subsequent time Turner asked the sheriff if he could talk to Michael Smith. Turner did not give Smith any Miranda warning, but according to him Smith told him and the assistant director that "they went in the house and took the stuff." Smith then took the Work Center officers to the woods and some more of the stolen property was recovered.
The grand jury of George County indicted the three for burglary and larceny on April 29, 1986. The case came on for trial November 7, 1986. Milford A. Weaver, the public defender of George County, stated for the record that he was first notified either November 3 or 4 previous that he was appointed to represent Carol, and that on November 7 (the day of the trial) he was notified by the court that he was also going to represent Smith. A. Wellington Gibbs was the court-appointed attorney for Williams.
Weaver reported to the court that he had on November 7 been given a copy of Carol's statement, and told of possible oral statements made by Smith, and that the statements were in conflict. He then asked to be relieved of representing either of the defendants, and requested the court to appoint another attorney, explaining that he could not represent them both. He further moved that the statements of them both be suppressed following a hearing because they had been taken in violation of their constitutional rights, and had been given no Miranda warnings.
The prosecuting attorney informed the court that the State:
[W]ould confess the motion as to his having been read his rights in that statement. We do not confess the motion as to whether or not the statement was voluntary on Mr. Smith's part. And we would confess the motion that we do not plan to use those statements in our case in chief, but in the event he takes the witness stand we would attempt to use them to impeach him.
*1332 The court overruled Weaver's motion to appoint separate counsel in view of the position of the State that the statements would not be offered by the prosecution except in rebuttal.
Despite this assurance by the State that none of the statements would be offered by the State in its case in chief, when Turner was testifying as a witness in the State's case in chief he testified that Smith "took us up to the area, a wooded area where the stuff had been dropped." He then related where the stolen property was located and what was recovered. (R. 58-59)
A defense motion to strike this testimony was overruled. (R. 60) Then, under cross-examination by Gibbs, counsel for Williams, Turner gave a detailed description of where the property was found, and the containers it was in.
In his testimony during the case in chief, over the objection of Weaver, Howell testified that Carol agreed to go with the officers to the woods to locate some of the stolen property.
Deputy Sheriff C.H. Davis testified that Carol told them where "the stuff was." He said that he and Officer Burnett went with Carol to the woods where some of the stolen property was recovered.
Carol testified in his own defense that one of the inmates, whom he did not name, told him the location of the stolen property which he showed the officers. He said that all he knew about the man who told him of the stolen property was his first name was "John" and he was about six feet tall.
He testified that he went into the woods to relieve himself, and upon returning to the road he saw the other two, Williams and Smith, with a bag "with the stuff in it." They then told him if he did not say anything they would give him some of the stuff. He testified he never knew what was in the bag.
Smith testified that he accompanied Turner and the assistant director Eddie Hunt to the woods, but they found the property on their own, he did not show it to them. He also denied telling Carol not to tell anybody about what he had in a sack, and that all that was in the sack was garbage.
Williams also testified in his own defense and denied having any knowledge of the burglary, and denied having told Carol not to say anything.
Hunt was called as a rebuttal witness for the State. He could give no reason why he and Turner had chosen Smith for questioning, and did not question the other two. He said that Smith was given no Miranda warning.
All right. Basically, Mr. Turner and I had gone to the Sheriff's Department to see Michael about the alleged burglary. We spoke with him a few minutes. He was asked if he would help recover the stolen merchandise. Michael wanted to know basically if we were trying to offer him a deal or something. What he was told was that we were not there to make a deal; we were just there to try to help recover some merchandise that had been taken. And we told him that if he did help us find what he could, then we would just tell the D.A.'s office that he did in fact help us find it.
(R. 155-156)
He testified further that Smith did in fact go with them and point out the location of items of personal property which had been stolen. As to Smith's explanation, Hunt testified:
Michael was asked about what had happened. And he told Mr. Turner and I that he and the other two had gone in the Whites house, that he had stayed downstairs and did not steal anything; the other two had gone upstairs. And then they had left. That's basically what was said.
(R. 156)
All three were convicted and have appealed. The circuit court permitted Gibbs to withdraw as counsel for Williams and appointed Weaver to represent him on appeal.

LAW
Weaver has filed a brief for all three with three assignments of error: (1) error *1333 in denying Weaver's motion for appointment of another lawyer for either Carol and Smith; (2) error in introduction into evidence of the confessions; and (3) error in admitting the confessions of Carol as against the co-defendants. Three cases are cited in this letter-size, wide-margin, six-page brief.
The record in this case has some disturbing aspects. Defense counsel was appointed on short notice (three days) to represent Carol, and extremely short notice (the day of trial) to represent Smith. Yet he made no motion to continue the case in order to properly prepare a defense.
Weaver did call to the court's attention that he had been furnished a copy of Carol's written statement, and told of possible oral statements given by Smith which showed the two defendants versions were in conflict. He then asked the court to appoint separate counsel for one of them. Because the state informed the court that no confession would be offered as part of the State's case in chief, the court denied this request.
Whether or not the statements given to officers were in conflict is not the test in deciding whether an attorney has a conflict in representing two defendants. The test is whether their defenses are in conflict with each other. This is important in determining both whether their trials should be severed and whether or not an attorney is placed in an unethical position having to represent them both. Obviously, if the defenses are in conflict their trials should be separated and each defendant should have his own independent counsel. Stringer v. State, 485 So.2d 274 (Miss. 1986); Irving v. State, 361 So.2d 1360 (Miss. 1978); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).
Here the defenses of Smith and Carol clearly were in conflict and the court erred in not appointing separate counsel. It is also inconceivable to this Court that had the circuit judge appointed competent separate counsel, there would not have been a motion for severance promptly filed as well. Rigby v. State, 485 So.2d 1060 (Miss. 1986); Walker v. State, 430 So.2d 418 (Miss. 1983).
Weaver as appointed counsel was derelict in not interviewing Carol and Smith, and then reporting to the court that there was indeed a conflict in their defenses. This was a classic instance in which each blamed the other two, making his own involvement marginal. Clearly there should have been a defense motion for a severance.
It was error to permit the State to offer during its case in chief testimony of Turner that Smith had shown Hunt and him the location of some of the stolen property, and Howell and Davis to testify that Carol had shown them the location of some of the stolen property. This was incriminating testimony, a part of the defendants' "confession," and should not have been offered as part of the State's case in chief, in view of the State's assurance to the court that no such evidence would be offered during this stage of the trial.
Because of the error in failure to appoint independent counsel, we must reverse. We do not address the validity of the incriminating admissions of Carol and Smith, although they are troubling as well. We do not foreclose the State an opportunity on retrial to determine if they are competent evidence.
Gibbs, as counsel for Williams, made no motion for a directed verdict of acquittal when the State rested, or when both sides had closed. He made no request for a peremptory instruction to the jury to find Williams not guilty. No error is argued on this appeal attacking the sufficiency of the evidence to convict Williams.
We must, however, address this as plain error. From this record Williams was plainly entitled to a peremptory instruction to the jury to find him not guilty. We therefore reverse and render as to his conviction. Flurry v. State, 536 So.2d 1340 (Miss. 1988); Nixon v. State, 533 So.2d 1078 (Miss. 1987).
We reverse and remand as to Carol and Smith.
*1334 We make these observations from this record:
The Bible contains many requests of sinners that they be "led not into temptation." Had these three convicts been under continuous surveillance, this burglary would never have occurred. If some local government is going to get the benefit of prison labor, at the very minimum some supervision should be forever present. This worthwhile program, for the State, will surely be short-lived unless it is carried out under carefully controlled circumstances.
While Turner and Hunt of the Work Center may be competent wardens, they need some schooling in investigating crime towards preparation for trial. It never occurred to either to see that these suspects were properly warned.
The trial of this case is a demonstration of haste makes waste. As an experienced chancellor once observed, "It is a lot easier when you get it straight the first time."
CONVICTION OF WILLIAMS REVERSED AND DEFENDANT DISCHARGED. CONVICTIONS OF SMITH AND CAROL REVERSED AND CAUSE REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.