593 So.2d 20 (1992)
Deborah LITTLEJOHN
v.
STATE of Mississippi.
No. 90-KA-0584.
Supreme Court of Mississippi.
January 15, 1992.
Richard B. Lewis, Chapman Lewis & Swan, Clarksdale, for appellant.
Mike C. Moore, Atty. Gen., Jackson, Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and BANKS and McRAE, JJ.
HAWKINS, Presiding Justice, for the COURT:
Deborah Littlejohn has appealed her conviction of conspiracy to distribute cocaine in the circuit court of the Second Judicial District of Bolivar County. Because the attorney who represented her was also counsel for the State's main witness in the trial against her for the same offense, we find an irreparable conflict of interest and consequent violation of Littlejohn's Sixth Amendment right to the effective assistance of counsel and reverse.

FACTS
Johnnie Walls is a practicing attorney in Greenville, acting through the professional association of "Walls Law Firm." On June 24, 1989, Deborah M. Littlejohn, for a fee of $5,000, employed him to represent her on a drug charge. She signed a two-page, single-spaced form employment contract. Paragraph 4 on the second page begins with the typed language "Additional provisions are:", and there is then added the following penned provision:

*21 client understands that attorney shall make a determination as to whether a conflict exists w/Jeffrey Thomas. If there is a conflict, further representation will be determined.
On October 20, 1989, Jeffery Thomas, accompanied and represented by Johnnie Walls, appeared before the circuit court upon an information charging him with conspiracy to transfer and deliver a controlled substance.[1]
At this hearing Thomas and his attorney, Walls, announced that he wished to plead guilty to the criminal information. He was advised by the court that the maximum sentence was twenty years imprisonment and a fine of $500,000.
The hearing transcript also contains the following colloquy:
BY THE COURT:
Mrs. Beckett, does the State have a recommendation it wishes to make as to the sentence to be imposed on this plea of guilty?
BY MRS. BECKETT:
Yes, Your Honor, the recommendation is that Mr. Thomas be sentenced to a term of eight years under the custody and supervision of the Mississippi Department of Corrections, with four years suspended after the defendant has served four years. And Mr. Thomas has also agreed to testify truthfully in any subsequent proceeding about any personal knowledge that he has.
Upon his plea, the court found Thomas guilty. Then, at the request of Walls, a presentence investigation and report was ordered, and sentence was deferred.
Thereafter, on January 24, 1990, the court conducted a sentencing hearing. At this hearing it developed that Thomas was married and had five dependents. He also had finished college. He had been in the military service and had a kidney replacement which required highly-skilled medical attention. The court sentenced Thomas to five years imprisonment, and suspended the sentence.
In count one of a four-count indictment, Deborah Littlejohn, William T. Burroughs, III, Sam Joseph Rogers, and Kathleen Ann Rogers were indicted on October 25, 1989, by the grand jury of the Second Judicial District of Bolivar County for conspiracy to sell or distribute cocaine in violation of Miss. Code Ann. § 41-29-115. Count two charged Burroughs with the felonious possession of cocaine; count three charged Littlejohn with the felonious possession of cocaine; and count four charged the two Rogers with the felonious possession of cocaine, all in violation of Miss. Code Ann. § 41-29-115(a)(4). Count one for the conspiracy was the same offense to which Thomas had pleaded guilty on October 20.
Burroughs and the two Rogers pleaded guilty to the indictment and Littlejohn's case was brought to trial May 17, 1990. She was represented by Walls. Burroughs, Sam Rogers and Thomas appeared and testified as witnesses for the State.
Prior to trial the court ruled that a search of Littlejohn's house and a confession *22 given by her were illegal, and the State dismissed count three of the indictment charging Littlejohn with possession. Her trial was confined to count one, conspiracy with the others to sell and distribute cocaine.
Burroughs, who operated a pawn shop and a bail bond business in Shelby, testified he was the "hub" man in the agreement the five had to sell cocaine. He furnished the money to Thomas who went to a cocaine supplier and returned with the drug. In turn Burroughs would deliver the cocaine to Littlejohn to sell. The two Rogers were radio dispatchers in the Shelby police department, who passed along messages as needed. Burroughs also operated a catering service, and had been engaged to furnish barbecue at the Cleveland Country Club on June 3, 1989.
On Friday, June 2, 1989, he gave Thomas $1,800 to purchase cocaine, but because he was not going to be in Shelby the next day, he told him to deliver the cocaine to Littlejohn directly.
On Saturday, June 3, Burroughs received a telephone call at the Cleveland Country Club. Sam Rogers told him that he was at Littlejohn's house and that Thomas had brought an oil base cocaine, which they could not use. He then drove to Littlejohn's house and gave Rogers and Littlejohn $400 with which to pay Thomas for some more cocaine, and after this transaction returned to Cleveland.
Burroughs was arrested that day.
On cross-examination Walls brought out that as part of his bargain with the State when he pleaded guilty Burroughs had agreed to testify for the State.
Rogers, a radio operator at the Shelby police department, corroborated Burroughs's testimony as to the agreement between the conspirators. When he got off work at four on that Saturday afternoon, he went to Littlejohn's house, who told him that Thomas had delivered the wrong kind of cocaine and that she needed to get in touch with him. He thereupon telephoned Burroughs, who came to Littlejohn's house. There Burroughs gave him $400, and he added $100 of his own. Burroughs had given Littlejohn the telephone number of Thomas, and Littlejohn telephoned Thomas that he had brought the wrong cocaine.
On cross-examination Walls asked Rogers if he had not pleaded guilty and made a plea bargain agreement with the State to testify as a witness for the State against Littlejohn, and brought out that he had.
Thomas testified that Burroughs on Friday, June 2, gave him $1,800 with which to purchase cocaine, and that he delivered cocaine to Littlejohn on Saturday afternoon at the hospital where she worked. She telephoned him at his home in Clarksdale around 6:30 p.m. that he had brought the wrong kind. He called her back later and told her that he had located some more cocaine, and then drove to her home in Shelby where she gave him $900 or $1,000. He left and bought another supply of cocaine, which he delivered to her around 8:00-8:30 that night.
In a three and a half-page, double-spaced cross-examination of Thomas, Walls asked him if he had pleaded guilty, but he did not ask him if part of his plea agreement was to testify against Littlejohn. On re-direct examination, over Walls' objection, the State asked Thomas who was his attorney when he pleaded guilty, and he replied, "Attorney Walls."
Littlejohn did not testify.
The jury found Littlejohn guilty, and she was sentenced to ten years imprisonment with five years suspended. Littlejohn has appealed.

LAW
Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.
The right "to have the Assistance of Counsel for his defense" guaranteed by the Sixth Amendment has been construed by the U.S. Supreme Court to mean "the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); Strickland v. Washington, 466 *23 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984); Merritt v. State, 517 So.2d 517 (Miss. 1987). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." Strickland, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (emphasis added).
While the "effective assistance of counsel" addressed in most of the cases involves competency of counsel in which all kinds of scores may be given, there are no such "gradations" in cases in which defense counsel has an actual conflict of interest between co-defendants. Alvarez v. U.S., 580 F.2d 1251, 1256 (5th Cir.1978). Competency of defense counsel is not then the issue; loyalty of counsel is. And when the reviewing court concludes that the defense lawyer in fact had "an actual conflict of interest," it does not "indulge in nice calculations as to the amount of prejudice attributable to the conflict. The conflict itself demonstrates a denial of the right to have the effective assistance of counsel." Glasser v. U.S., 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); Cuyler v. Sullivan, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 347 (1980).
Moreover, undivided loyalty of defense counsel is essential to the due process guarantee of the Fifth Amendment. Alvarez, 580 F.2d at 1256; Porter v. U.S., 298 F.2d 461, 464 (5th Cir.1962).
From the record we must conclude that there was an irreparable conflict of interest between Thomas and Littlejohn, and that Walls' attempted representation of them both denied Littlejohn the effective assistance of legal counsel vouchsafed her by the 6th Amendment to the U.S. Constitution.
The testimony of Thomas was the center-pole of the State's case against Littlejohn on the conspiracy charge. Without it the State's case would have been much weaker.
Littlejohn employed Walls as her attorney on June 4, 1989.
The State could not have proceeded against Thomas by a criminal information without his being represented by counsel and under oath waiving an indictment by a grand jury. Art. 3, § 27, Miss. Const. Yet on October 20, 1989, there was a criminal information filed against Thomas, and on the same day he pleaded guilty to it, agreeing that as his part of the bargain with the State he would testify against the others. This would not have occurred in the absence of preceding serious, meaningful negotiation and a clear and distinct understanding between the prosecution and defense counsel.
When Thomas pleaded guilty on October 20, the others had not even been indicted. Whether he testified before the grand jury is not in the record, but an indictment was returned against Littlejohn and the others on October 25.
When Walls acted as counsel for Thomas on October 20, in whose interest was he devoted? He may have been helping Thomas and hurting Littlejohn, or it may have been the other way around, but he clearly was not benefitting them both.
When Walls rose to cross-examine Thomas at Littlejohn's trial, who was he representing, Littlejohn or Thomas? When he refrained from asking Thomas if he had not, in order to get a lighter sentence, made a bargain with the State to testify against Littlejohn (as he had asked both Burroughs and Rogers), in whose interest was he acting?
When Walls advised Littlejohn in her determination as to whether she should take the witness stand in her own defense, and she chose not to do so, in whose interest was he acting?
From this record we must also conclude that the prosecution in this case, if they did not indeed know it on October 20, 1989, were well aware long prior to Littlejohn's trial in May, 1990, that Walls was representing Thomas and Littlejohn, and could not have been unaware of this conflict of interest.
U.S. v. Alvarez, 580 F.2d 1251 (5th Cir.1978), is closely analogous. The attorney, Levine, had been employed to represent several of the defendants in a drug conspiracy case. When two of the defendants *24 who had pleaded guilty were called as government witnesses against his client Alvarez, and over his objection that their 5th amendment rights were being violated, were nevertheless going to be required to testify, Levine moved to withdraw from the case. The Court did not rule on his motion, and Levine remained as counsel for Alvarez.
The Court of Appeals noted that "joint representation of co-defendants is not per se violation of the Sixth Amendment," and "an actual, not merely hypothetical or speculative conflict must be demonstrated ..." 580 F.2d at 1255. The Court further noted, "we have always considered that the undivided loyalty of counsel as essential to due process," and that while competency of legal representation "may fall anywhere along a continuum ranging from the incompetent to the superlative, conflict-laden representation is not susceptible of such fine gradations." 580 F.2d at 1256.
The Court observed that when "it became apparent" that Levine's clients who had pleaded guilty "were to be called to testify against Alvarez, then Levine was confronted with a glaring conflict of interest which pulled him in opposite directions." He first had an obligation to see that his clients who pleaded guilty fulfilled their plea bargain agreement and incriminate Alvarez. He was under a duty to advise them as to their testimony and the consequences if they failed to appear and testify truthfully.[2]
He had a simultaneous obligation to Alvarez to discredit their testimony by a well-prepared, vigorous cross-examination.
A lawyer's role encompasses much more than simply advising a prospective witness to tell the truth; he must take additional steps to prepare him to testify. It is during this preparatory stage that defense counsel is torn between serving the witness' best interests in fully cooperating with the government in supplying credible testimony and the accused's obvious desire to discredit the witness' testimony. The Constitution does not countenance such divided loyalties.
580 F.2d at 1258.
The Court then added:
Although the conflict of interest confronting Levine prior to trial would provide a sufficient basis for our decision, the record shows that the actual, blatant conflict existing prior to trial grew to outrageous proportions as a result of what transpired during the trial itself.
580 F.2d at 1251.
Levine undoubtedly wished to discredit Altman and Ellis by showing they had something to gain by testifying against Alvarez. His attempt to do this, however, would be seriously undermined, he knew, if it could be shown that he was the attorney who had negotiated those very pleas. Furthermore, the connection between Alvarez, Altman and Ellis would be all the more clear if it could be shown that Levine represented all three of them. Fearing the specter of guilt by association, Levine conducted a very limited cross-examination of Altman and Ellis in which he failed to expose the fact that their testimony was given pursuant to a deal they had made with the government.
On the basis of such overwhelming evidence, we must conclude that Mr. Levine's representation was afflicted with an actual, identifiable conflict of interest which compromised his allegiance to Alvarez and denied him his constitutional right to effective assistance of counsel and a fair trial. [Footnotes omitted]
580 F.2d at 1258. See also, Stephens v. U.S., 595 F.2d 1066, 1070 (5th Cir.1979).

PREJUDICE
As to the duty of Alvarez to show he had been prejudiced, the Court held that "once an actual conflict is demonstrated, a showing of specific prejudice is not necessary, ..." for "... to hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of *25 prejudice suffered by a particular defendant. An accused's constitutional right to effective representation of counsel is too precious to allow such imprecise calculations."

WAIVER
The Court noted that while an accused might "waive his right to conflict-free counsel, ..." "such waivers are not to be lightly or casually inferred and must be knowingly and intelligently made." 580 F.2d at 1259. The Court then held that where a trial judge had notice of an actual conflict of interest:
[T]he trial judge is under a duty to advise the defendant of his right to separate, independent counsel. United States v. Boudreaux, 502 F.2d 557 (5th Cir.1974). In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant in indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel. United States v. Garcia, 517 F.2d 272 (5th Cir.1975); see also Gray v. Estelle, 574 F.2d 209, 213 (5th Cir.1978); United States v. Mahar, 550 F.2d 1005 (5th Cir. 1977). It is abundantly clear from the record, however, that appellant did not waive his constitutional rights in the trial below.
580 F.2d at 1259-1260.
The Court added that, "we refuse to charge laymen such as Alvarez with knowledge of the potential conflicts present in the joint representation setting." 580 F.2d at 1260.
The Court concluded that where there was no showing either of bad faith on the part of Alvarez or a clear, intelligent and knowing waiver:
We hold today that an accused, whether represented by appointed or retained counsel, is deprived of his Fifth and Sixth Amendment right to effective assistance of counsel, even in the absence of a showing of prejudice, when his attorney operates under an actual conflict of interest.
580 F.2d at 1260.
The prosecution has an obligation to the accused, as well as society, not to participate in a criminal proceeding against the accused when it knows that a constitutional right of the defendant is being violated. Wheat v. U.S., 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).
It is not at all clear from this record that the circuit judge himself was put on notice until the trial was in process that Walls had an actual conflict of interest in this case. It is clear, however, that the prosecution was put on notice well before trial that Walls was attempting to represent Littlejohn when he had a glaring conflict of interest between her and Thomas. The State thus participated in a criminal prosecution when it knew there was an actual deprivation of Littlejohn's constitutional right to the effective assistance of counsel. It is no defense to the State in this case that the State was not the perpetrator of the offense; it was an accessory. As Wheat makes clear, when the prosecution is made aware in a criminal case that a defense attorney has an actual, as opposed to a potential, conflict of interest in his representation of multiple defendants, the government has a responsibility to call this matter to the attention of the trial judge. The Constitution does not countenance such a disregard of an accused's right to a fair trial.
As first noted above, in a trial involving an actual conflict of interest, as opposed to a potential conflict, legal counsel either scores a hundred or a zero.
It was, of course, first and foremost incumbent upon Walls to recognize on October 20 when Thomas pleaded guilty and that he was a vital witness in the State's case against Littlejohn to withdraw as her defense counsel. For, at the moment it was apparent to Walls that his client Thomas was going to appear as a State witness against his other client Littlejohn, a potential conflict ripened into an actual one. The district attorney's office obviously knew Thomas was a key witness in its *26 prosecution against the others. If this office did not know it on October 20, it became well aware shortly thereafter that Walls was also attorney for Littlejohn and was actively pursuing her defense by various pre-trial motions. The State did nothing to apprise the circuit judge, but rather proceeded to trial with knowledge that a blatant conflict of interest existed and that a Sixth Amendment violation was the inevitable consequence.
A lawyer can represent two or more parties on the same side of a lawsuit if their interests are identical. Interests are identical when the parties will receive a correspondingly equal benefit if they are successful, or a correspondingly equal detriment if they lose. Chancery examples are parties to a land partition, or parties to a will contest. Circuit court examples are a master and servant who are defendants, or the insured and the insurance carrier.[3]
Representing multiple defendants in a criminal case can be accomplished without violating the lawyer's duty to any of his clients, and one attorney can indeed upon occasion meet the needs of all better. Holloway v. Arkansas, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978). It is nonetheless a perilous undertaking, requiring counsel to be especially wary for events or circumstances that can instantly transfer a potential into an actual conflict of interest.
While no such rule has been promulgated for our circuit courts, we note that Rule 44(c) of the Federal Rules of Criminal Procedure require the district court on its own to inquire into all cases of joint representation.[4]
Moreover, as the U.S. Supreme Court held in Wheat, in certain cases it may be incumbent upon the district court judge to require an attorney to withdraw from multiple representation over the objection of his client.
This Court has addressed conflict of interest representation in criminal cases in various factual settings. Armstrong v. State, 573 So.2d 1329 (Miss. 1990); Carol v. State, 540 So.2d 1330 (Miss. 1989); Stringer v. State, 485 So.2d 274 (Miss. 1986); Thomas v. State, 472 So.2d 425 (Miss. 1985); Irving v. State, 361 So.2d 1360 (Miss. 1978). In Armstrong, we held that even when both defendants pleaded guilty, there can be a situation in which defense counsel is faced with an actual conflict. In a specially illuminating opinion of the insidious dangers in such legal representation, Justice Anderson for this Court posted warnings and the appropriate action to take when lawyers and trial courts are faced with conflict of interest questions.
REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The transcript of these proceedings comes from a supplementation of the record on the motion of Littlejohn's present counsel. The supplemental record does not contain the information filed against Thomas. This Court directed the circuit clerk of Bolivar County to furnish a copy of the information, which is as follows:
 STATE OF MISSISSIPPI
 VS.
 JEFFERY THOMAS, DEFENDANT
 NO. 7175
 CRIMINAL INFORMATION

The District Attorney of the Eleventh Circuit Court District of the State of Mississippi charges that beginning on or about the 2nd day of June, 1989 and ending on or about the 4th day of June, 1989, the said JEFFREY THOMAS, late of the County, Judicial District and State aforesaid, did unlawfully, wilfully and feloniously conspire with others to commit the crime of selling, bartering, transferring, distributing or dispensing cocaine, a Schedule II controlled substance as provided in Section 41-29-115 of the Mississippi Code of 1972, Annotated, as amended, in violation of
Section 97-1-1(a) of the Mississippi Code of 1972, Annotated, as amended, against the peace and dignity of the State of Mississippi.
 Laurence Y. Mellen
 District Attorney
 Eleventh Circuit Court District
 By /s/ Patricia Beckett
Sworn to and subscribed before me this the 20th day of October, 1989.
[2] This is especially true in this state. Failure on the part of the witness to fulfill his part of the plea bargain agreement justifies the State in disregarding the agreement. Salter v. State, 387 So.2d 81 (Miss. 1980).
[3] In the last two instances, however, a representation which begins with the parties having an identical interest may develop into a situation where their interests diverge. See, Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255 (Miss. 1988); Anthony v. Frith, 394 So.2d 867 (Miss. 1981); Gulf Refining Co. v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954).
[4] Rule 44(c) in pertinent part provides:

[T]he court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.