624 So.2d 500 (1993)
Ronald SYKES
v.
STATE of Mississippi.
No. 91-KP-1030.
Supreme Court of Mississippi.
September 23, 1993.
*501 Ronald Sykes, pro se.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the court:
This case presents the question whether the failure to advise the accused of the minimum sentence as provided in the Uniform Criminal Rules of Circuit Court Practice is fatal, regardless of circumstances. We hold that it is not and that it was not fatal under the circumstances here at issue. We also reject Sykes' other claims and affirm the judgment of the trial court denying post-conviction relief.

I
This is an appeal from a judgment of the First Judicial District of Hinds County Circuit Court summarily dismissing a motion for post-conviction relief filed by Ronald Sykes. On December 6, 1990, Ronald Sykes and his brother Robert each pleaded guilty to possession of methamphetamines with intent to distribute and possession of more than an ounce of marijuana with intent to distribute. Ronald Sykes, who had two prior felony convictions, was sentenced as an habitual offender on the marijuana charge to three years; he was sentenced to twenty-nine years as a non-habitual on the methamphetamines count. The sentences were set to run consecutively. In September 1991, Sykes filed a motion to vacate his conviction with the Hinds County Circuit Court. He claims the following errors as grounds for relief:
1. The plea of guilty entered under Count 1[1] of the indictment [was] involuntary as a matter of law where the court and counsel incorrectly informed [movant] that there was (sic) no mandatory minimum sentence under the statute governing sentencing for said offense.
2. Movant was indicted, convicted and sentenced for possessing a substance which the controlled substance statute (Miss.Code of 1972, § 41-29-113) does not describe and, therefore, does not prohibit.
3. Movant was provided with ineffective assistance of counsel where counsel represented movant and movant's brother on the same charge and operated under a conflict of interest.
Sykes has abandoned his second claim of error, after the State pointed out in its brief that §§ 41-29-115(A)(c)(3) and 41-29-139(a)(1) & (2), Miss. Code Ann. (Supp. 1993), specifically proscribe the possession of methamphetamine with intent to distribute.

II
Sykes contends that the trial judge did not inform him that the Mississippi Code specifies a minimum fine of $1,000 for possessing controlled substances with intent to distribute. He goes on to argue that this lack of advice renders his guilty plea involuntary. Rule 3.03 of the Mississippi Uniform Criminal Rules of Circuit Court Practice does provide that:
When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine: ... [t]hat the accused understands the nature and consequences of his plea, and the maximum and minimum penalties provided by law... .
Miss.Unif.Crim.R.Circ.Ct.Prac. 3.03. Additionally, this Court has said on several occasions that failure to apprise a defendant of *502 the maximum and minimum penalties for the offenses he is charged with renders a plea to those offenses involuntary and invalid. Mallett v. State, 592 So.2d 524 (Miss. 1991); Wilson v. State, 577 So.2d 394, 397 (Miss. 1991); Vittitoe v. State, 556 So.2d 1062, 1063-65 (Miss. 1990).[2]
A portion of the section pertaining to sentencing for possession of methamphetamine with intent to distribute reads:
In the case of controlled substances classified in Schedule I or II,[3] as set out in Sections 41-29-113 and 41-29-115, ... such person may, upon conviction, be imprisoned for not more than thirty (30) years and shall be fined not less than One Thousand Dollars ($1,000.00) nor more than One Million Dollars ($1,000,000.00) or both;

Miss. Code Ann. § 41-29-139(b)(1) (Supp. 1992). The record reflects that the following discussion took place regarding sentencing requirements, when Ronald Sykes and his brother appeared to plead guilty:
BY THE COURT: Now, correct me if I'm wrong on the maximum sentence. I believe the maximum sentence for possession of methamphetamines with the intent to distribute is 30 years. Is that right?
BY MR. MARSHALL (DEFENSE COUNSEL): That's correct, Your Honor.
BY THE COURT: And a Million Dollar fine?
BY MR. MARSHALL: Yes, sir.
BY THE COURT: And for the possession of marijuana of more than one ounce with intent to distribute is three years.
BY MR. MARSHALL: Yes, sir.
BY THE COURT: And a Thirty Thousand Dollar fine. Is that correct?
BY MR. MARSHALL: Yes, sir.
BY THE COURT: And there is no minimum on this.
BY MR. MARSHALL: That's correct, Your Honor.
BY THE COURT: All right.
BY THE COURT: Do each of you understand the maximum sentence that you could receive?
A. (ROBERT SYKES): Yes, sir.
A. (RONALD SYKES): Yes, sir.
A comparison of the statutory sentencing prescription and the colloquy that took place in the Court reveals that Sykes is correct in his assertion that the Code mandates a minimum fine of $1,000 of which he was not advised.
Ronald Sykes was not levied a fine, however. Moreover, Ronald Sykes was well aware of the plea bargained recommendation of the district attorney that he be sentenced to three years as an habitual offender on the marijuana charge and 29 years on the methamphetamine charge. Essentially, therefore, he is arguing to this Court that his guilty plea was involuntary, because he was not advised regarding a relatively minor minimum fine that he should have received but did not receive.
This Court has on past occasions applied harmless error analysis to omissions in advice to pleading defendants, where the circumstances of the case were such that no actual harm fell upon the defendants. See Gaskin v. State, 618 So.2d 103 (Miss. 1993); Vittitoe v. State, 556 So.2d 1062, 1064 (1990). Specifically, the Court has said that where the trial court fails to inform a defendant of the critical elements of the offense with which he is charged but the record shows the defendant was apprised of those elements by other sources prior to his pleading guilty, the error of the court in failing to properly advise the defendant is harmless. Gaskin v. State, 618 So.2d 103 (Miss. 1993); Vittitoe v. State, 556 So.2d 1062, 1064 (1990).
The case at bar calls for a natural extension of that rule. It is true that under proper application of the law, Ronald Sykes should have received a fine of at least $1,000 and not more than $1,000,000 for possessing *503 methamphetamine with the intent to distribute it. The fact of the matter is that he did not; and we cannot imagine that he would have chosen not to plead guilty to the same terms he received, if the judge had simply said to him, "Ronald, the law says you should receive a fine of at least $1,000, but I am not going to impose that fine upon you." We hold that where, as here, we can say beyond a reasonable doubt that the failure to advise an accused of a minimum played no role in the decision of the accused to plead, such failure is not fatal to the sentence.

III
Sykes' final assertion of error is that he received ineffective assistance of counsel in the plea process. He claims a conflict of interest existed in the dual representation that was rendered to Sykes and his brother, who was charged with the same crimes. It is axiomatic that the Sixth Amendment right to counsel encompasses a right to effective assistance from an attorney who is conflictfree. See Cuyler v. Sullivan, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 347 (1980); Littlejohn v. State, 593 So.2d 20, 23 (Miss. 1992). Joint representation is not per se violative of the Sixth Amendment, however. Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348; Armstrong v. State, 573 So.2d 1329, 1331 (Miss. 1990); Stringer v. State, 485 So.2d 274, 275 (Miss. 1986). This Court said in Littlejohn v. State, 593 So.2d at 26, "A lawyer can represent two or more parties on the same side of a lawsuit if their interests are identical. Interests are identical when the parties will receive a correspondingly equal benefit if they are successful, or a correspondingly equal detriment if they lose."
In Stringer v. State, 485 So.2d at 275, this Court held that "in order to demonstrate a violation of his Sixth Amendment Rights, a defendant must establish that an actual conflict of interest affected his lawyer's performance." (quoting Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348); quoted in Armstrong, 573 So.2d 1329, 1333 (Miss. 1990). Once actual conflict is shown, prejudice is presumed. Armstrong at 1333. The Littlejohn Court noted:
`[O]nce an actual conflict is demonstrated, a showing of specific prejudice is not necessary, ...' for `to hold otherwise would engage a reviewing court in unreliable and misguided speculation as to the amount of prejudice suffered by a particular defendant. An accused's constitutional right to effective representation of counsel is too precious to allow such imprecise calculations.'
593 So.2d at 24-25 (quoting U.S. v. Alvarez, 580 F.2d 1251 (5th Cir.1978)).
In the instant case, Sykes contends that a conflict of interest on the part of his counsel is evident from the disparity in the sentences received by him as compared to his brother. Ronald Sykes and his brother Robert were charged with and pled guilty to the same offenses. Ronald received three years without parole on one count to be followed by twenty-nine years with parole eligibility after seven years and three months. Robert received ten years with nine suspended on one charge and three years with two suspended on the other. The actual jail time of one year on each charge was set to run concurrently. Ronald Sykes contends that these results clearly demonstrate that he and his brother did not receive a "correspondingly equal benefit" from the joint representation as required by Littlejohn v. State, supra. As noted above, that requirement flows from the more general demand that co-defendants have identical interests if they are to be represented jointly. 593 So.2d at 26.
The fact that Sykes and his brother received vastly different sentences does not mean that their interests were not identical with respect to the charges at issue in that litigation. There is no indication from the record that the Sykes brothers were implicated in different degrees or in different manners with respect to the charges. Ronald Sykes had prior convictions that made him an habitual offender. His brother had no prior felony convictions. Thus, if convicted, they were destined to be sentenced differently regardless of the representation provided by their counsel.
It should also be noted that Sykes and his brother were asked at their arraignment *504 whether any conflict existed, and they said, "No." They were also asked at sentencing if they were satisfied with the representation they received, and they both responded, "Yes." Thus, there is the possibility of a waiver here. Such "waivers are not to be lightly or casually inferred and must be knowingly and intelligently made," however. See Littlejohn, 593 So.2d at 25. There is nothing here to suggest that the waiver was not knowing and intelligent. The plain fact is that the two brothers were in different circumstances relative to sentencing and, therefore, the fact that they received different sentences is no ground for conjecture that they received disparate representation.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court is affirmed.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] Count 1 of the indictment charged Sykes with "wilfully, unlawfully, feloniously and knowingly possess[ing] methamphetamine with intent to distribute same." (C.P. 45).
[2] Without engaging in a survey of the Court's decisions on this issue, the State contends that all the decisions from this Court regarding failure to advise on the minimum penalty pertain to incarceration and not fines.
[3] Section 41-29-115(A)(c)(3) classifies any substance containing methamphetamine as a Schedule II controlled substance. Miss. Code Ann. § 41-29-115(A)(c)(3) (Supp. 1992).