MYERS, J.,
for the court.
¶ 1. The Circuit Court of Bolivar County, Mississippi, the Honorable Albert B. Smith, III presiding, tried and convicted Dexter Jones for the burglary of a check-cashing business located in Cleveland, Mississippi. The trial court sentenced him to seven years in the custody of the Mississippi Department of Corrections. Jones appeals the circuit court’s verdict, stating three issues for us to consider:
I. WHETHER THE TRIAL COURT ERRED IN DETERMINING *580 THAT JONES’S TRIAL COUNSEL HAD NO CONFLICT OF LOYALTY WHEN THE COUNSEL HAD PREVIOUSLY REPRESENTED A PROSECUTION WITNESS AT A PRELIMINARY HEARING.
II. WHETHER THE TRIAL COURT ERRED IN DENYING JONES’S PROPOSED JURY INSTRUCTION FOR THE LESSER-INCLUDED OFFENSE OF TRESPASS.
III. WHETHER THE TRIAL COURT ERRED IN DENYING JONES’S MOTION FOR A DIRECTED VERDICT.
Statement of the Facts
¶2. Donnell McNeer owned a commercial building in Cleveland, Mississippi. Between 6:30 and 7:00 a.m. on the morning of May 27, 2001, McNeer was mowing the grass and cleaning the lot behind his building. He noticed some screws on the ground. On closer examination, it appeared the screws came from the door to Speedy Check Cashers (the store), an occupant of the building. Additionally, the door to the business was ajar.
¶ 3. McNeer called the police, and Officer Mitchell Millican arrived to investigate. Millican entered the building. He saw the interior of the store was in disarray. He went to the meter box at the rear of the building to try to restore electrical power. Millican then found that the meter box had been pulled off the building. Further investigation resulted in obtaining fingerprints from various items in the store.
¶ 4. The fingerprints belonged to Dexter Jones and Dwayne Lee. Raymond Wong represented Jones at all judicial proceedings, from the preliminary hearing to this appeal. Jones’s preliminary hearing was held on June 18, 2001. On August 20, 2001, Wong represented Dwayne Lee at a preliminary hearing for the same offense. Lee later received different court-appointed counsel, and the only client-attorney relationship between Lee and Wong was during Lee’s preliminary hearing. Lee eventually made a deal with the State in which he would testify against Jones.
¶ 5. Before the trial, Wong made a motion to recuse himself. He claimed he would have a conflict of loyalty between Jones, his current client, and Lee, his former client. The trial court found no conflict and denied the motion. The trial continued, and the jury found Jones guilty of burglary.
Legal Analysis
I. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT JONES’S TRIAL COUNSEL HAD NO CONFLICT OF LOYALTY WHEN THE COUNSEL HAD PREVIOUSLY REPRESENTED A PROSECUTION WITNESS AT A PRELIMINARY HEARING.
¶ 6. Jones’s attorney represented both Lee and Jones at their respective preliminary hearings. Lee later became a witness for the State in the trial against Jones. Jones argues that this caused a “conflict of loyalty” and impaired Wong’s representation.
¶ 7. Jones argues that Littlejohn v. State, 593 So.2d 20 (Miss.1992) controls in this situation. We disagree. In Little-john, the defendant’s attorney also represented a State’s witness. It was, in fact, the defendant’s attorney who negotiated the witness’s plea bargain with the State. Part of that bargain was the witness would testify against her co-defendant. Id. at 22-23. There is no question that such a situation, where counsel advises one of his clients to testify against another of his clients, would present counsel with a conflict of interest. That is not the situation here. In the instant case, Wong represented both Jones and Lee at their respec *581 tive preliminary hearings. At some time after Lee’s preliminary hearing, he received different counsel. That new counsel arranged the plea bargain between the State and Lee. Wong continued his representation of Jones, and did not even remember that he represented Lee in the same matter until the day before trial.
¶ 8. “It is well-settled that ... joint representation is not per se violative of the constitutional guarantees of effective assistance of counsel; however, prejudice is presumed if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer’s performance.” Armstrong v. State, 573 So.2d 1329, 1333 (Miss.1990) (emphasis added) (citing Burger v. Kemp, 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)). The Mississippi Supreme Court adopted this standard in Stringer v. State, 485 So.2d 274 (Miss.1986). The supreme court elaborated further, stating this presumption is “insufficient to impugn a criminal conviction. To demonstrate a violation of his sixth amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer’s performance.” Stringer, 485 So.2d at 275.
¶ 9. Jones offered us no examples of how any alleged conflict affected Wong’s representation. Since he did not establish an actual conflict, but merely the possibility of one, we find no merit to the issue of Wong’s conflict of loyalty.
II. WHETHER THE TRIAL COURT ERRED IN DENYING JONES’S PROPOSED JURY INSTRUCTION FOR THE LESSER-INCLUDED OFFENSE OF TRESPASS.
¶ 10. Jones asserts that the trial court should have given instructions to the jury concerning the lesser-included offense of trespass. Jones is correct in that a burglary must, by definition, include a trespass. Harper v. State, 478 So.2d 1017, 1021 (Miss.1985). In order for a lesser-included offense instruction to be granted, the trial judge must be able to say, taking the evidence in the light most favorable to the accused, that a reasonable jury could find the defendant guilty of the lesser-included offense (and conversely not guilty of at least one element of the principal charge). Id. We do not think a reasonable jury could look at the evidence and find Jones guilty of trespass, but not of burglary.
¶ 11. The key, Jones asserts, is the “breaking” element of burglary.[1] He argues that the door was open when he entered the building,[2] and that he “slid in” without touching the door. Since he says he used no force to enter the building, he did not “break.” See Genry v. State, 767 So.2d 302, 309 (¶21) (Miss.Ct.App.2000). Jones stated that while he was there, he did not touch anything. He said he left in the same manner, without touching the door, and with it remaining open.
¶ 12. However, the overwhelming amount of evidence presented showed that Jones could not have been telling the truth. Let us begin with Jones’s account of how he found the building. He stated he was walking along at two o’clock a.m., and he saw the door was open. This was from some distance away. Jones had to “jump” a fence to get to the allegedly open *582 door.[3] According to testimony, there was no light around the door. There were no lights on within the building. Additionally, there were no street lights in the vicinity. According to co-defendant Lee, the scene was so dark that they could not see, and had to “feel around.” It is highly unlikely that Jones could have therefore seen that the door was open.
¶ 13. Then we come to the building itself. Again there was evidence that makes it impossible for a reasonable jury to find Jones was truthful. Jones asserts that the door remained open when he left. However, the next morning, the door was found in the “pulled closed” position, but not closed all the way. Also, the door was an “automatic closing” door, such as is commonly found in commercial establishments. The closing mechanism still worked the next morning. Such a door will not remain open. Therefore, to enter the building, Jones and Lee must have used some force, no matter how slight, to enter the building.
¶ 14. Finally, we note that Jones called his own credibility into question. He stated he did not touch anything within the building, and he also told police he had not been in the building. However, his fingerprints were found on several items, including pre-paid cellular phone boxes and the dial from the safe.
III. WHETHER THE TRIAL COURT ERRED IN DENYING JONES’S MOTION FOR A DIRECTED VERDICT
¶ 15. Jones contends that the trial judge erred by not granting a directed verdict in his favor. He states that the jury’s verdict was against the weight of the evidence.
¶ 16. When we review the denial of a criminal defendant’s motion for a directed verdict, we must view the evidence in the light most favorable to the State. We will not reverse unless a reasonable juror could only find the defendant not guilty. Kizart v. State, 795 So.2d 582, 585(¶ 10) (Miss.Ct.App.2001) (citing Garth v. State, 771 So.2d 984, 986(¶ 6) (Miss.Ct. App.2000)).
¶ 17. In the case before us, there was overwhelming evidence for a jury to find Jones guilty. The evidence showed that Jones, with Lee, pried open the door to the store. Jones’s fingerprints were found on many items in the store, including the safe and the phone boxes. Jones’s co-defendant implicated him. Both Jones and Lee went in the store with the intent to steal. Jones himself admitted as much, but said he left when he saw nothing to steal.
¶ 18. Section 97-17-33 of the Mississippi Code Annotated (Rev.2000) defines burglary as “breaking and entering ... [of a] store ... with intent to steal.... ” The State introduced evidence that Jones broke the door to the store, entered the store and intended to steal money or other personal property contained within the store. It was well within the province of a reasonable jury to find Jones guilty of the crime of burglary. Therefore, we will not reverse the jury’s decision. Nor will we declare that the trial court erred in not granting Jones’s motion for a directed verdict.
Conclusion
¶ 19. We find no merit with any of the issues Jones raises on appeal. Therefore, we affirm the decision of the trial court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF BURGLARY OF A BUILDING AND SEN *583 TENCE OF SEVEN YEARS AS AN HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SAID SENTENCE TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND GRIFFIS, JJ., CONCUR.

. Jones admits he entered the building with the intent to steal, and he stated he left when he saw "there wasn’t no [sic] money.”

. In the transcript, Jones states the door was open "about like that,” and gestured with his hands. There is no attempt to describe the distance he indicated.

. Again, there is no description in the record as to how far the fence is from the door.