KITCHENS, Justice,
concurring:
¶ 27. Our constitutional guarantees that the accused have assistance of counsel require reversal of Hill’s conviction. Thus, I concur with the disposition. U.S. Const, amend. VI (“In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense.”); Miss. Const, art. 3, § 26 (“In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both....”). The Court correctly finds that a conflict of interest arose during trial and that Hill’s court-appointed counsel, Stephanie Mallette, should not have been appointed as standby counsel. However, the trial court already had determined, well before the second trial began, that Mallette had a conflict of interest justifying her removal from the case. Still, despite recognizing her divided loyalties, the trial court required her to continue as Hill’s advisor. Whether her role was “full-fledged” counsel, standby counsel, or somewhere in between is immaterial, for any degree of legal advice requires absolute loyalty to the client. See Kiker v. State, 55 So.3d 1060, 1065 (Miss.2011) (“Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.”) (quoting Littlejohn v. State, 593 So.2d 20, 22 (Miss.1992)). Once the Court determined that there was an actual conflict of interest, Hill was entitled to the appointment of substitute counsel. Id. at 1066 (citing Littlejohn, 593 So.2d at 25). Because Hill was not given the option of court-appointed, conflict-free counsel, I concur with the Court’s reversal of his conviction.
¶ 28. Generally, a trial judge enjoys discretion when considering an attorney’s motion to withdraw. See e.g., Rubenstein v. State, 941 So.2d 735, 783 (Miss.2006). Likewise, this Court applies an abuse of discretion standard of review to denials of defendants’ requests to discharge counsel. Rinehart v. State, 883 So.2d 573, 576 (Miss.2004). But this discretion is not absolute, for our courts always must apply the correct legal standards. See e.g., Freeman v. State, 121 So.3d 888, 894-95 (Miss.2013) (in contrast to findings of fact, questions of law are reviewed de novo) (citing City of Laurel v. Williams, 21 So.3d 1170, 1174 (Miss.2009)). Although Court approval is required before appointed counsel may be relieved of his or her representation, a conflict of interest, once recognized by a court, requires the trial court to remove the conflicted attorney. Hayden v. State, 972 So.2d 525, 536 (Miss.2007). The lower court did not apply this legal standard, and this error is clearly reflected in the record before us.
*728 ¶29. Hill’s first court-appointed attorney was allowed to withdraw after Hill had filed a bar complaint and accused that attorney of attempting to “sabotage” his case.[2] Mallette was appointed in that lawyer’s stead, and Hill continued to file various pro se motions and letters, as he had from the beginning of the case. The first trial was set for January 31, 2012, and on January 9, 2012, he filed several documents with the circuit court, including a letter indicating that he was “firing” his attorney. In the letter, Hill made numerous accusations against Mallette, alleging, among other things, that she had filed motions on his behalf without his consent, that she had refused to interview his witnesses,[3] and that she had allegedly accused him of murdering two men. As with his request that his first attorney be discharged, Hill did not state that he wished to proceed pro se. Instead Hill wrote, “I will not be seeking another public defender. I choose to seek my own counsel.”
¶ 30. On January 25, 2012, Mallette requested that she be allowed to withdraw and that Hill be permitted to obtain his own counsel. Her motion cited a personal conflict of interest based on the letter’s accusations and Hill’s having filed a complaint against her with the Mississippi Bar. The trial court granted Mallette’s motion in an “Order Allowing Withdrawal.” The order noted that there had been a hearing on the matter and announced that Mallette “is withdrawn from her representation of [Hill].” Yet, the very next sentence read, “Stephanie Mallette is hereby appointed to represent Jeffrey Lance Hill as standby counsel and assist him with legal and procedural matters when he requests as necessary pursuant to Rule 8.05 of the U.R.C.C.C.P.”[4]
¶ 31. The order ostensibly granting Mallette’s motion to withdraw and then appointing her as standby counsel was entered on January 31, 2012, the day of Hill’s first trial, and the sequence of events that day is unclear. There are no transcripts in the appellate record related to these first proceedings, including the hearing on Mallette’s motion to withdraw. That same day, the trial court entered an order declaring a mistrial, noting that “the Defendant appeared in open Court representing himself to answer the indictment.” The order did not mention Mallette, and there is no reference that Hill had been given standby counsel. In other words, it is impossible to determine the extent of Mal- *729 lette’s participation in the first trial, if any. The record does not reflect a request from Hill to exercise his right to self-representation in his first trial, and there is no documentation that Hill “knowingly and voluntarily” waived his right to counsel.
¶ 82. Although Hill is appealing the conviction from his second trial, the proceedings related to the first trial certainly bear upon the question of whether he “validly waived his right to counsel.” The second trial began with the trial court’s cautioning Hill about the pitfalls of self-representation and reminding Hill that he could reconsider his prior decision(s) to proceed pro se. Hill also was given the warnings set forth in Rule 8.05 of the Uniform Circuit and County Court Rules and outlined in Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975),[5] and Hill responded affirmatively when the trial judge asked him whether he still wished to exercise his right to self-representation.
¶ 33. Nevertheless, the trial court’s “Order of Withdrawal,” appointing Mal-lette as standby counsel despite a conflict of interest, still was in effect at the second trial. Even if Hill could have waived the conflict, nothing in the record indicates that the conflict was explained to Hill or what impact it may have had on Mallette’s ability to provide appropriate representation. Rule 8.05 provides general guidelines, but also requires the court to inform the defendant of “other matters as the court deems appropriate.” A conflict of interest falls in this category. This Court has adopted the generally accepted rule that “[i]n order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively partiei-pate in the waiver decision by eliciting a statement in narrative form from the defendant ... indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel.” Littlejohn, 593 So.2d at 25 (quoting United States v. Alvarez, 580 F.2d 1251, 1260 (5th Cir.1978)).
¶34. The judge assured Hill that he had a constitutional right to defer to standby counsel at any point and to allow Mallette to take on “whatever role he desire[d].” During the trial, Hill clearly relied on these assurances, frequently consulting Mallette and asking/permitting her to argue the merits of crucial objections. At times, the trial judge instructed Mallete to participate actively in Hill’s defense while instructing Hill to remain silent and speak through his attorney. Thus, Mal-lette’s role at trial was not limited to standby counsel, and her involvement was more akin to one acting as “co-counsel.” See Metcalf v. State, 629 So.2d 558, 562 (Miss.1993) (noting that “hybrid representation” is a “middle ground” serving “to strike a balance between the right to counsel and the right to self-representation.”). Her expanded role at trial only compounded the error made when the court determined that Mallette had a conflict of interest but did not remove her from the case.
¶ 35. By their very nature, our constitutional guarantees of due process of law and the right to counsel encompass the right to conflict-free representation and undivided loyalty. See e.g., Wood v. Georgia, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. *730 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978)); Kiker v. State, 55 So.3d 1060, 1066 (Miss.2011) (citing Littlejohn v. State, 593 So.2d 20, 23 (Miss.1992); Armstrong v. State, 573 So.2d 1329, 1331 (Miss.1990)). It is evident from the record that Hill’s constitutional rights to assistance of counsel and/or self-representation were compromised before his first trial had begun. U.S. Const, amend VI; Miss. Const, art. 3, § 26. The trial court twice required Mal-lette to continue representation, despite conflicts of interest. Although the trial court followed the narrative provided in Rule 8.05, without an explanation and waiver of the conflict, Hill could not “knowingly and voluntarily” exercise his right to self representation. URCCC 8.05. Hill could not have made an informed and intelligent decision to waive his right to counsel, because Hill was not given the option of being defended by conflict-free counsel. Having determined that Mallette had a conflict of interest warranting her removal from the case, the trial court erred by appointing her as standby counsel. The error was compounded when the trial court encouraged, and sometimes required, that Mallette participate as “hybrid counsel.” Accordingly, I would reverse the judgment of conviction based on a conflict that had existed long before trial began.
WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.
COLEMAN, Justice,
dissenting:
¶ 36. I find persuasive the reasoning of several courts that have held that a criminal defendant has no Sixth Amendment right to advisory counsel after validly waiving his right to counsel at trial. See U.S. v. Singleton, 107 F.3d 1091, 1102 (4th Cir.1997); U.S. v. Salerno, 81 F.3d 1453, 1460 (9th Cir.1996); People v. Brante, 232 P.3d 204, 208 (Colo.App.2009); People v. Gordon, 108 Cal.App.3d 907, 166 Cal.Rptr. 809, 814 (1980); State v. Clark, 722 N.W.2d 460, 466 (Minn.2006); State v. Gonzales, 181 Ariz. 502, 510, 892 P.2d 838, 846 (1995). Hill, not his advisory counsel, “must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.” McKaskle v. Wiggins, 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
¶ 37. I am not, as the majority suggests, concerned with whether Hill has a Sixth Amendment right to advisory counsel. He does not. My concern is with the effect of the absence of a Sixth Amendment right to advisory counsel on the majority’s attempt to find a violation of the nonexistent right. Perhaps one appointed as advisory counsel could give bad advice to a client — even awful advice. However, the majority does not adequately explain how — even if Hill has shown a failure of his advisory counsel to render good advice — the purported failure of advisory counsel rises to the level of a Sixth Amendment violation when Hill clearly and on the record waived his Sixth Amendment right to counsel.
¶ 38. Because I cannot agree with the logic of the majority in predicating its holding on the violation of a Sixth Amendment right to advisory counsel that does not exist, I respectfully dissent.
RANDOLPH, P.J., JOINS THIS OPINION.

. Hill’s first lawyer was the same attorney who was asked to serve as Mallette’s replacement during the second trial. Thus, he was not eligible to serve in Mallette’s place.

. In fact, the trial court previously had determined that "the Defendant wanted two witnesses called at his trial with whom [Mallette] had a conflict of interest precluding her from contacting the witnesses and interviewing them.” (Emphasis added.) The order then appointed another attorney, Marty Haug,
with the limited responsibility to interview [the two witnesses] and report to Ms. Mal-lette the substance of their testimony should either be called as witness. Should either be called as a witness [Haug] will be responsible for examining the witness(es). Ms. Mallette is ordered to turn over a copy of all discovery materials provided by the State of Mississippi as well as to assist [Haug] with the substance of the potential witnesses.
Thus, despite Mallette’s conflict, the order appeared to require Mallette’s direct participation in the matter as she was required to "assist [Haug] with the substance of the potential witnesses.” The record does not reveal the nature of Mallette’s conflict; but the order raises questions as to whether her inability to interview certain witnesses would have disqualified her from further representation.

.The trial judge had crossed out the phrase "when he requests.” He replaced that phrase with "as necessary,” and initialed the alteration.

. "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must ‘knowingly and intelligently’ forgo those relinquished benefits.” Id.