636 So.2d 1220 (1994)
Ricky Lee SMITH, a/k/a Rickey Lee Smith
v.
STATE of Mississippi.
No. 91-KP-1054.
Supreme Court of Mississippi.
February 3, 1994.
Rehearing Denied May 19, 1994.
*1221 Ricky Lee Smith, pro se.
Michael C. Moore, Atty. Gen., Mary Margaret Bowers, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
Ricky Lee Smith entered a guilty plea to the crime of armed robbery in the Circuit Court of DeSoto County, Mississippi, and was sentenced to serve a term of eight years in the custody of the Mississippi Department of Corrections. Smith filed a motion for post-conviction collateral relief claiming his plea was involuntary and that he should have been advised of the minimum mandatory sentence. The lower court, without conducting an evidentiary hearing, denied Smith's motion to set aside and vacate the plea and conviction. Aggrieved, Smith appeals to this Court, asking that we once again confront the question of voluntariness of a plea and the effect of the failure to advise a defendant of the minimum sentence when accepting a guilty plea. We conclude that the trial court was well within its right not to conduct an evidentiary hearing. The facts from the entirety of the record before this Court show beyond a reasonable doubt that the failure to advise this accused of the minimum mandatory sentence played no role in his decision to plead guilty. Smith was not prejudiced, but was sentenced according to his expectations.

THE FACTS
On February 6, 1989, Ricky Lee Smith was indicted in DeSoto County Circuit Court for the crime of armed robbery. Specifically, Smith was charged with taking "from the presence or person of C.D. Tharrington certain personal property, to-wit: One (1) wallet containing cash money in the amount of $165.00 and credit cards, the personal property of C.D. Tharrington, against the will of C.D. Tharrington, by putting C.D. Tharrington in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a concrete block... ."
After appointment of counsel and apparent plea negotiations, Smith, on May 24, 1989, filed his sworn petition for the court to accept his guilty plea to the armed robbery and three other charges not involved in this appeal. Paragraph 6 of Smith's petition stated that "I have been advised of the maximum sentence the court can impose on this charge and plea."
*1222 On June 5, 1989, Smith personally appeared with counsel before the circuit court judge for a plea hearing. An extensive and lengthy hearing was conducted. The State recited the following factual allegations it could prove, if the cause here in question were tried:
[T]he State could prove by admissible and credible evidence and beyond a reasonable doubt that Ricky Lee Smith, did on January 29, 1989, commit the crime of robbery through the exhibition and use of a deadly weapon. The victim was C.D. Tharrington. This occurred outside the post office in Hernando, Mississippi. The defendant saw the victim inside the post office. The defendant saw that the victim had money. The defendant waited until the victim came out of the post office. The defendant struck the victim with a concrete block, causing serious head injury. The defendant then took cash money from the person of the victim.
Smith told the court he understood and recalled the events related to the charge. He then petitioned the court to accept his plea of guilty.
Although the plea hearing record embraces ten legal size pages of questions and advisory statements by the circuit court judge directed to Smith, as well as Smith's elicited answers acknowledging an understanding of the effects of his offered plea,[1] the record does not show that Smith was advised by the court, his attorney or any responsible party concerning the mandatory minimum sentence for armed robbery.
After determining that the plea was voluntarily and intelligently made, the circuit court judge accepted Smith's guilty pleas and sentenced him to serve eight years with the Mississippi Department of Corrections on the armed robbery charges and a total of seventeen years suspended sentence on the other charges. As to the armed robbery charge the court's judgment also provides:
This sentence is imposed pursuant to the provision of § 47-7-3, Miss. Code Ann. 1972, as amended, and defendant shall not be eligible for parole, earned time, good time, or any other administrative reduction of time.
On February 11, 1991, Smith filed his motion for post-conviction collateral relief in the DeSoto County Circuit Court. He sought to set aside and vacate the pleas and convictions, asserting that he was denied effective assistance of counsel, that the entry of his guilty plea was involuntary, made without a full and complete understanding of the consequences thereof, and that he was coerced by intentional misinformation from his counsel. He alleged under oath that defense counsel failed to inform him of the minimum mandatory sentence for armed robbery and led him to believe that he would receive a sentence that could be served in the county jail. According to Smith, his lawyer told him falsely that Smith's mother had advised the guilty plea and that he, Smith, was to respond in the affirmative to all of the court's questions in order to get the court to accept the plea. The circuit court judge considered Smith's petition and entered an order summarily denying and dismissing it. Smith appeals presenting the following issues:
I. WHETHER APPELLANT WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF THE STATE OF MISSISSIPPI.
II. WHETHER APPELLANT'S PLEA OF GUILTY WAS INVOLUNTARY *1223 AS A MATTER OF LAW WHERE THE APPELLANT WAS NOT INFORMED OF THE MANDATORY MINIMUM SENTENCE WHICH COULD BE IMPOSED, BY THE TRIAL JUDGE, PRIOR TO THE PLEA OF GUILTY BEING ACCEPTED AND IN ACCORD WITH RULE 3.03(3), MISS.UNIF.CRIM. RULES OF CIR. COURT PRACTICE.
III. WHETHER APPELLANT'S PLEA OF GUILTY IS NULL AND VOID WHERE IT WAS NOT VOLUNTARILY MADE IN ACCORD WITH RULE 3.03(2), WHERE THE PLEA WAS INDUCED BY DECEPTION BY COUNSEL ADVISING APPELLANT THAT HIS MOTHER HAD CALLED AND ADVISED APPELLANT, THROUGH COUNSEL, TO PLEAD GUILTY.

DISCUSSION OF LAW

I. INEFFECTIVE ASSISTANCE OF COUNSEL
Smith alleges ineffective assistance of counsel. Examining the facts as contained within the record now before this Court and applying the two-pronged test as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is obvious Smith failed to sustain his claim of ineffective assistance of counsel. This Court has adopted and adhered to this two-pronged test as set forth in Strickland. Schmitt v. State, 560 So.2d 148 (Miss. 1990); See also Gilliard v. State, 462 So.2d 710, 713-14 (Miss. 1985).
In Schmitt, this Court, applying the Strickland criteria stated: "Before counsel can be deemed to have been ineffective, it must be shown (1) that counsel's performance was deficient, and (2) that the defendant was prejudiced by counsel's mistakes." 560 So.2d at 154. Smith must overcome the presumption that "counsel's performance falls within the range of reasonable professional assistance." Id. To meet this burden, Smith must show that "there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." Smith's claim that "his counsel's deficient conduct caused him to plead guilty to an armed robbery, where if he had went [sic] to trial he could have been found guilty of nothing more then [sic] simple robbery or simple assault" is contrary to the law and facts. His confession alone is sufficient to withstand this frivolous claim.
Smith claims he was not advised by counsel of basic information or the consequences of his plea. This allegation is not supported by the record. The record clearly reflects, at the hearing, prior to the lower court's acceptance of his plea, that Ricky Smith was absolutely aware of the nature and consequences of the plea he was about to enter into. He fully understood that his plea of guilty was an admission to committing the crime and that the plea would result in mandatory prison time. Smith heard his attorney tell the judge that counsel had told Smith what the State's recommendation would be in advance of the hearing. Smith advised the court that he understood the recommendation of the State. He knew in advance, fully expected, and received the sentence given him by the lower court.
Smith knew full well that the trial court was relying on the State's recommendation. Although Smith argues he was not informed of the minimum sentence, he does not argue that he was misled into believing that the eight year sentence, which he was told he would receive, was the minimum sentence. Neither does Smith claim that he was under the impression that he would receive the minimum sentence for his crime.
Smith has simply failed to overcome the burden placed upon him by Strickland to show (1) that his counsel was deficient, and (2) that he was prejudiced by his counsel's mistakes.
In addressing the remaining two issues raised by Smith, it becomes necessary to restate some of the facts of the case sub judice which warrant highlighting. These statements set out below show that the failure of the judge to advise Smith that the judge was obligated to sentence him to at *1224 least three years imprisonment[2] had no effect upon Smith's decision to plead guilty:
1. Smith's attorney stated that he advised Smith, prior to entry of the guilty plea that the State would recommend a punishment to the court.
2. Smith's attorney also stated that the punishment to be recommended by the State was discussed with Smith several times, and Smith understood it.
3. Smith stated that he understood that the State would make a recommendation of punishment to the court. Smith also stated that he knew what punishment the State would recommend to the court.
4. Smith stated he fully understood the consequences of his plea.
5. At sentencing, Smith replied in the affirmative when asked if he understood the eight-year (8-yr.) sentence to be a mandatory sentence.
6. Smith did not claim that he was induced to enter his guilty plea because of misrepresentation of the mandatory minimum sentence (3 yrs.) or failure to advise of same.

7. Smith claimed in his statement of facts on January 28, 1991, that his counsel advised him "he must just answer yes to the court's questions or that the plea would not be accepted and the sentence would be greater in the event there was a trial on the charge." If this be true, why then did Smith repeatedly respond "NO" to many critical questions asked him by the lower court judge concerning his plea? An examination of the questions posed by the trial judge and Smith's response as shown by the record regarding this subject is very enlightening:
Q. Are you the type of person, Mr. Smith, that would come in here and plead guilty to something that you're not guilty of?
A. No, sir.
Q. Do you understand why that's a very important question?
A. Yes, sir.
Q. Is a person who through fear or worry or pressure came into this Courtroom and plead guilty to a charge that he was wrongfully charged with, do you understand I could send an innocent person to prison based on a plea of guilty, if a person admits guilt and they are not guilty, you understand that?
A. Yes, sir.
Q. You wouldn't do that, would you?
A. No, sir.
Q. If you thought you were wrongfully charged on any of these charges, you would not be pleading guilty to it, would you?
A. No, sir.
Smith clearly responded "no" to critical questions from the trial judge in apparent disregard of his lawyer's advice, if Smith's version of this incident were to be credited. However, the exchange between Smith and the trial judge does not support Smith's contention. The exchange between the trial judge and Smith when he tendered his plea of guilty, tends to support an inference of truthfulness on Smith's part. The flow of the colloquy is easy and natural.
In contrast, Smith's current contentions and credibility are certainly suspect. When we compare his previous sworn testimony during his guilty plea with his current affidavit, the latter is practically rendered a "sham," thus allowing the summary dismissal of the petition to stand. See Harris v. State, 578 So.2d 617, 620 (Miss. 1991). At one time or the other Smith has obviously committed perjury, which may warrant appropriate action by a grand jury. See Sanders v. State, 440 So.2d 278, 289 (Miss. 1983) (Roy Noble Lee, J., specially concurring).

II. THE VOLUNTARINESS STANDARD FOR PLEAS

A. The Standard of Voluntariness in Mississippi Courts
Uniform Criminal Rules of Circuit Court Practice Rule 3.03(2) begins with the *1225 heading "Voluntariness." That rule states that a plea is not voluntary if "induced by fear, violence, deception or improper inducements." Consequently, by negative implication, a plea is voluntary if not induced by fear, violence, deception or improper inducements. There is absolutely nothing in the record, other than Smith's claim that he was told his mother advised him to enter a plea of guilty, which suggests that Smith was induced by any of these factors. Smith's claim that he blindly entered a plea of guilty because his attorney told him that his mother advised him to do so is not sufficient to make his plea involuntary. What his mother allegedly said has not previously been held to be the type of inducement affecting the voluntariness of a guilty plea nor will it now. Therefore, according to the record, Smith's plea complied with the Rule 3.03(2) definition of voluntariness.
Smith also confirmed to the court his understanding that the eight year sentence recommended by the State, that Smith was previously made aware of and which was accepted by the court, was a mandatory sentence. As a result, Smith cannot now claim that he was misinformed or ignorant of the mandatory nature of the sentence.

B. The Constitutional Standard of Voluntariness
Voluntariness of a plea is also a measure of a constitutionally proper plea. However, that standard varies from the standard of Rule 3.03(2), and has been stated as follows:
In order to meet constitutional standards, a guilty plea must be freely and voluntarily entered. It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108.
Schmitt v. State, 560 So.2d 148, 153 (Miss. 1990), (quoting Gilliard v. State, 462 So.2d 710, 712 (Miss. 1985)).
However, the constitutional standard for voluntariness of a plea does not mention knowledge of the mandatory minimum sentence as an essential element. Instead, it merely states that the accused should understand the effects of a guilty plea. It is clear from the facts set out previously in this opinion, that Smith understood the consequences of his plea.
Along the same line of inquiry into a constitutionally sufficient voluntary plea, this Court has quoted the United States Supreme Court, stating:
What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences. When the judge discharges that function, he leaves a record adequate for any review that may be later sought ... and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

Wilson v. State, 577 So.2d 394, 397 (Miss. 1991), (quoting Boykin v. Alabama, 395 U.S. 238, 243-244, 89 S.Ct. 1709, 1712-1713, 23 L.Ed.2d 274 (1969)) (emphasis added).
Based upon that standard of review, it appears that the lower court judge sufficiently established, on the record, that Smith had been previously apprised of the punishment which would be recommended by the State, and that he fully understood its ramifications.
Consequently, since Smith's allegation that he was misinformed by his attorney regarding his mother's advice to plead guilty is of no significance, it may be said that the record reflects that Smith's plea was voluntary as a matter of law under the standard for Mississippi Courts and the Constitutional standard. Further, applying the law as previously stated by this Court:
We adhere to the principle that a post-conviction collateral relief petition which meets basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to *1226 relief. Myers v. State, 583 So.2d 174 (Miss. 1981); Harris v. State, 578 So.2d 617, 619 (Miss. 1991); Wright v. State, 577 So.2d 387, 389 (Miss. 1991); Billiot v. State, 515 So.2d 1234, 1237 (Miss. 1987).
Harveston v. State, 597 So.2d 641, 643 (Miss. 1992). See also Houston v. State, 461 So.2d 720 (Miss. 1984) (post-conviction relief petition was denied because the transcript showed affirmatively that Houston's plea was freely and voluntarily made).
Similarly, an examination of the transcript of Smith's hearing reveals that he was fully aware of the sentence which the State would recommend and which the court accepted. The transcript also reflects Smith's understanding of the mandatory nature of the sentence which he had expected.

III. FAILURE TO ADVISE THE ACCUSED OF THE MINIMUM SENTENCE

A. The Analysis Announced In Gaskin and expanded in Sykes is the Proper Test
This point is couched as the dispositive issue of the case. Automatic invalidation of a guilty plea is not the rule in Mississippi. In Gaskin v. State, 618 So.2d 103, 108 (Miss. 1993), this Court held that the trial court's failure to correctly advise the defendant of the applicable minimum and maximum sentences was harmless error where it is shown that the defendant was correctly informed by another source. That very same issue was also presented and expanded as the dispositive issue in Sykes v. State, 624 So.2d 500 (Miss. 1993).
In Sykes, the accused was sentenced to a term of imprisonment and no fine was imposed. However, the penalty statute for the crime mandated a fine of at least $1,000, but not more than $1,000,000, and made imprisonment up to 30 years optional.[3] Sykes was not informed of the minimum fine specified by the Mississippi Code. He subsequently claimed that the failure to notify him of the mandatory minimum fine rendered his guilty plea involuntary.
The Sykes Court held that where it can be said "beyond a reasonable doubt that the failure to advise an accused of a minimum played no role in the decision of the accused to plead, such failure is not fatal to the sentence." Sykes, Id., at 503 (emphasis added). The Court reasoned that the situation in Sykes warranted a natural extension of the "harmless error rule" which had been applied on past occasions to omissions in advice rendered to pleading defendants where no actual harm was suffered by the defendant. Sykes, Id., at 502.
The test announced in Sykes necessitates a "harmless error" analysis. Utilizing that analysis, it can readily be said, beyond a reasonable doubt, that the failure to advise Smith of the mandatory minimum sentence did not affect his decision, considering the fact that he had already admitted guilt and was willing to plead guilty in exchange for a sentence of eight years to be recommended to the court by the State.
Accordingly, no harm was suffered by Smith as a result of the failure to notify him of the minimum sentence, and such failure was not fatal to the lower court's sentence of eight (8) years imprisonment. Further, and as stated in another recent case, "[m]ore importantly, however, he was not harmed because there can be no claim that the misinformation induced the plea." Nelson v. State, 626 So.2d 121, 126 (Miss. 1993).

B. Other "Voluntariness" Cases Are Distinguishable
The other recent Mississippi cases addressing the issue of the effect of failure to inform of a minimum sentence on the voluntariness of a plea and findings that such failure may have rendered the plea involuntary, are fundamentally different from the present case. Those cases all present one of two factual scenarios, neither of which is here present:
1. The sentence which the accused was informed would be his sentence if he plead guilty was erroneous and he acted in "reliance" on that information, but the mandatory minimum sentence which was imposed *1227 was harsher, or there was a misstatement by the court or the defense attorney as to the applicable minimum sentence. Nelson v. State, 626 So.2d 121 (Miss. 1993); Washington v. State, 620 So.2d 966 (Miss. 1993); Alexander v. State, 605 So.2d 1170 (Miss. 1992); Myers v. State, 583 So.2d 174 (Miss. 1991); Baker v. State, 358 So.2d 401 (Miss. 1978); or,
2. No representation of a minimum sentence was made, but the accused "expected" a much less severe sentence. Vittitoe v. State, 556 So.2d 1062 (Miss. 1990).
It should be noted that Mallett v. State, 592 So.2d 524 (Miss. 1991) appears to represent an anomaly. However, Mallett is distinguishable from this case. That case fails to give insight into the rationale of the Court for its holding that failure to inform an accused of the minimum and maximum sentences which could be imposed renders a plea involuntary. Mallett, along with Sykes, should be reexamined in view of the reasoning raised in those cases in determining whether they are applicable legal principles essential in deciding the case sub judice.
In Mallett the Court gave no rationale for its decision. Examination of the record in Mallett reveals Mallett's counsel never advised him of exactly what penalties the charges carried nor how much time that he would have to serve on the charges. The trial court also failed to advise him of the minimum penalty provided by law. Mallett was never advised there was a mandatory penalty for armed robbery. Mallett was not asked if he expected the particular recommendation read by the District Attorney on the record. The court failed to explain or ask the defendant if that was the recommendation Mallett expected to hear. Mallett did not receive any assistance from his lawyer, the trial judge, or anyone else which aided him in understanding the nature and consequences of his actions in pleading guilty. The trial court after the recommendation simply passed sentence on the defendant. That procedure was obviously not the model for other judges to follow.
Mallett stated that "had he known that he could have received lesser sentences he would never `had pled guilty but would have proceed [sic] to trial.'" The Mallett record clearly shows the rationale for the Court's holding that Mallett's plea was rendered involuntary. We firmly agree with that decision.
Mallett and the case sub judice are clearly distinguishable. "Reliance" was clearly present in Mallett, while neither the element of expectation nor reliance are present in this case. Smith's circumstance is more clearly identifiable with that in Sykes.
This Court in further addressing voluntariness stated in Myers v. State, 583 So.2d 174, 177 (Miss. 1991) (quoting from Sanders v. State, 440 So.2d 278 at 287) (Miss. 1983):
In Sanders we drew an important distinction. We there emphasized:
... that a mere expectation or hope, however reasonable, of a lesser sentence than might be meted out after conviction upon trial by jury will generally not be sufficient to entitle a petitioner to relief in cases such as this.
The relevant distinction is between a "generalized prediction" and a "firm representation" of such lesser sentence. A post-conviction prisoner may find succor only in the latter.
In the case sub judice Smith never had the latter "firm representation" as set out in Myers.
The present case does not fit into either of the two aforementioned categories. There was no misrepresentation or misstatement as to a mandatory minimum sentence made to Smith by anyone, and he did not expect to receive the statutory mandatory minimum sentence. Instead, he knew and understood from the onset that the State would recommend a mandatory sentence of imprisonment of eight years if he plead guilty. Therefore, the "reliance" element of the cases from the first category is missing, as well as the "expectation" element of the case from the second category.

CONCLUSION
It appears clear that the case sub judice does not fit into either of the two categories denoting "reliance" or "expectation" as their *1228 touchstone. Further, the guilty plea meets the test of voluntariness under both standards analyzed. Most importantly, however, Sykes has already addressed the issue considered herein, and that case held that failure to notify of a minimum sentence was not per se fatal to a sentence imposed otherwise. Applying the test announced in Sykes, we find that it was "harmless error" not to notify Smith of the minimum sentence. Smith does not claim that there was a misrepresentation of the sentence which he was to receive, nor does he allege that the failure to be informed of the minimum sentence induced him to enter his plea of guilty. The transcript of his hearing shows affirmatively that Smith was fully apprised, and understood the consequences, of the sentence which the State intended to recommend to the court, and which was imposed by the court.
Accordingly, this Court holds that the lower court's ruling denying Smith's motion to set aside and vacate the pleas and convictions was proper and no evidentiary hearing was required.
The circuit court's ruling is affirmed.
LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr., J., concur.
McRAE, J., concurs in result only.
BANKS, J., dissents with separate written opinion joined by HAWKINS, C.J., and SULLIVAN and PITTMAN, JJ.
BANKS, Justice, dissenting.
Because, unlike the majority, I am, on this record, unable to conclude that the failure to advise Smith of the minimum sentence was harmless beyond a reasonable doubt, I dissent, from the failure to grant an evidentiary hearing to explore both the fact and the impact of that failure.
Our threshold consideration is the action of the circuit court in denying and dismissing Smith's petition without the benefit of an evidentiary hearing. Smith's claim that his guilty plea was involuntary because he was not informed of the mandatory minimum sentence which the court could impose should be dispositive of this cause. The record fails to show Smith was so informed.
Our articulations in Washington v. State, 620 So.2d 966 (Miss. 1993); Alexander v. State, 605 So.2d 1170 (Miss. 192); Mallett v. State, 592 So.2d 524 (Miss. 1991); Wilson v. State, 577 So.2d 394 (Miss. 1991); and Vittitoe v. State, 556 So.2d 1062 (Miss. 1990) suffice to mandate reversal. Here, unlike Sykes v. State, 624 So.2d 500 (Miss. 1993), we cannot say with certainty on this record that any failure to explain the minimum mandatory sentence for armed robbery was harmless. Sykes complained about a minimum fine that was not imposed and which, under the circumstances there presented, could not have played a role in his decision to enter a guilty plea. Id.
Nothing in the record here belies Smith's assertion that he was unaware that there was a minimum non-parolable prison term or that his sentence would not be such that he could serve it in the county jail. See Nelson v. State, 626 So.2d 121 (Miss. 1993). Non-parolable prison time actually imposed is a far cry from a $1000 fine which was never imposed as in Sykes. I cannot conclude that the absence of information concerning a mandatory minimum without parole played no role in inducing a plea.
It is possible that a defective guilty plea transcript may be rehabilitated and cured by evidence adduced in a post-conviction hearing. See Gaskin v. State, 618 So.2d 103 (Miss. 1993); Horton v. State, 584 So.2d 764, 768 (Miss. 1991). For that reason, judgment of the circuit court should be reversed and the cause remanded for an evidentiary hearing on all issues.
HAWKINS, C.J., and SULLIVAN and PITTMAN, JJ., join this dissent.
NOTES
[1] During the plea hearing, Smith, after being sworn, was handed the documents tendered by him to the court. The following colloquy then occurred:

Q ... I want you to review those documents and tell me if you've read them, do you understand the content of them, and did you sign them?
A Yes, sir.
Q Do you understand  did Mr. Scott also explain them to you?
A Yes, sir.
Q Do you understand in Cause no. 89-13, that's a request by you to offer a plea of guilty to the charge of robbery with a deadly weapon?
A Yes, sir.
[2] Section 97-3-79 Miss. Code Ann. (1972)  Robbery; use of deadly weapon.
[3] Section 41-29-139(b)(1) Miss. Code Ann. (1972).