## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 96-CA-00840-SCT

*JAMES B. SEATON a/k/a JAMES BENJAMIN*
*SEATON*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/96 |
| TRIAL JUDGE: | HON. ROBERT L. GOZA |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BENTLEY E. CONNER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT ALLRED, III |
| DISTRICT ATTORNEY: | MARK RAY |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/08/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/31/97 |

**BEFORE SULLIVAN, P.J., SMITH AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

Seaton appeals the Order of the Circuit Court of Madison County entered on July 8,1996, which, after an evidentiary hearing, denied his motion for post-relief conviction. Seaton's motion, filed on December 5, 1994, sought to set aside a judgment of conviction and sentence entered on April 23, 1993, which resulted from Seaton's pleas of guilty on April 13, 1993 to rape, armed robbery and two counts of kidnaping. On November 24, 1992, Seaton and Jones, his alleged partner, were indicted in a five count indictment alleging crimes that occurred in October of 1992. The Seaton Family hired Attorney Richard Rehfeldt to represent Seaton on a charge of armed robbery, rape and two counts of kidnaping.

On April 13, 1993, Seaton 's pleas of guilty to two counts of kidnaping, one count of armed robbery

and one count of rape were accepted by the court when it found that each plea was freely, voluntarily and intelligently given and there was a factual basis to support each charge. One week later, Seaton, age fifteen at the time the crimes were committed, was sentenced to serve a term totaling 125 years, 25 years on Count I for kidnaping, 25 years on Count II for kidnaping, 30 years for the crime of armed robbery and 45 years for the crime of rape. Seaton filed a motion for post-conviction relief and an evidentiary hearing on that motion commenced on October 6, 1995, and after a continuance the hearing concluded on October 27, 1995. There was much factual dispute as to several issues that were considered at the hearing.

In its Order denying Seaton's motion, Judge Goza stated, "[i]n my opinion, a fair reading of the petition to enter the pleas, the transcript of the pleas, and the testimony and exhibits introduced at the evidentiary hearing not only shows that the Movant has failed to meet this burden but clearly establishes that the pleas were freely, voluntarily and intelligently made and entered."

## STATEMENT OF THE LAW

## STANDARD OF REVIEW

The trial court, sitting without a jury, held an evidentiary hearing to determine the voluntariness of Seaton's pleas. As stated by this Court, "[u]nder these circumstances, our standard of review is well settled: this Court will not set aside findings of a trial court sitting without a jury unless such findings are clearly erroneous." *Schmitt v. State*, 560 So. 2d 148, 151 (Miss. 1990) (*citing Reynolds v. State*, 521 So. 2d 914, 918 (Miss. 1988); *Merritt v. State*, 517 So. 2d 517, 520 (Miss. 1987)). Since this is an appeal, not an evidentiary hearing, and "where there is conflicting evidence but a finding of fact by the lower court that is not clearly erroneous, this Court must affirm the lower court." *Alexander v. State*, 610 So. 2d 320, 328 (Miss. 1992) (*citing Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989)).

Of course, this is assuming the trial court applied the correct legal standard. *See Leatherwood v. State*, 539 So. 2d 1378 (Miss. 1989) (explaining the proper legal standard for determining prejudice on an effective assistance of counsel claim is whether the plea process was affected, not whether the outcome at a trial on guilt would have been affected); *McClendon v. State,* 539 So. 2d 1375, 1377-78 (Miss. 1989) (vacating and remanding denial of post-conviction relief when the lower court applied a clear and convincing standard as opposed to the correct legal standard of preponderance of the evidence); *Neal v. State*, 687 So. 2d 1180,1187 (Miss 1996) (holding that the lower court properly applied the correct legal standard since the burden of proof is preponderance of the evidence under the Post-Conviction Relief Act instead of a harmless error analysis). Since there is no evidence or argument that Judge Goza applied the wrong legal standard, his findings of disputed facts must be affirmed if not clearly erroneous. With this standard of review in mind, each of Seaton's issues on appeal will be addressed.

### I.

**DID APPELLANT SEATON PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HE BELIEVED HE MIGHT SUFFER DEATH BY LETHAL INJECTION IF FOUND GUILTY BY A JURY ON ONE OR MORE COUNTS OF THE INDICTMENT?**

The statutory procedure for entitling post-conviction relief provides that " . . .(7) No relief shall be

granted under this chapter unless the prisoner proves by a preponderance of the evidence that he is entitled to such." Miss. Code Ann. § 99-39-23(7) (1994). The threshold factual issue is whether or not Seaton was told by his attorney that he might suffer death by lethal injection if found guilty by a jury. The trial court held an evidentiary hearing which addressed this contention. If the lower court had found Seaton's allegation to have merit then Seaton would be entitled to have his plea vacated because the plea would have been entered without knowing the true consequences of a trial by jury. *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978). But this Court has stated, "[t]he practical premise underlying our limited review of matters of fact is that the trial court heard the testimony and observed the demeanor of witnesses and from this made the tough and necessary credibility choices." *Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76, 83 (Miss. 1992). *See also McCallum v. Laird*, 244 Miss. 273, 142 So. 2d 32 (1962). Although *Omnibank* and *McCallum* were both civil cases the same principle applies in the context of a post-conviction evidentiary hearing.

Leading up to Seaton's entry of his guilty pleas, there is much dispute as to what Seaton was told and what he was not told. Seaton claims that Rehfeldt told him that if he did not plead guilty he would face a maximum punishment of death by lethal injection if found guilty at trial. He supports this claim by his affidavit and testimony at the evidentiary hearing as well as by affidavits and testimony by his grandfather, his mother, and the affidavits of his grandmother and a friend of the family. Seaton's mother testified that Rehfeldt told her on about five occasions that her son ran the risk of lethal injection.

On the other hand, Rehfeldt stated in his affidavit that he never told Seaton or his family that Seaton was ever facing the death penalty. He also testified at the evidentiary hearing that he believed he told Seaton the day of the preliminary hearing that there were not any charges for which he was facing the death penalty and furthermore he does not believe in representing a paid client on a death penalty case and he would not have accepted the case if he thought the death penalty was a possibility. Rehfeldt testified unequivocally that he did not tell Seaton that the death penalty was a possibility. He testified that the only time the death penalty was ever discussed was when Seaton wanted to attack his confession because the police had told him he would face the death penalty if he did not confess. The appellant argues that Rehfeldt's testimony was self serving since he had just defended a bar complaint on this action and would not want to defend a claim for ineffective assistance of counsel. This by itself is not enough to find that Rehfeldt was lying under oath in a court of law.

The trial judge found the testimony and supporting affidavit of Rehfeldt "conclusively rebut the Movant's claim of deception and coercion through fear of capital punishment." The trial judge heard all the conflicting testimony and affirmatively determined that this allegation had no merit. This Court affirms the lower court on this assignment of error since this finding was not clearly erroneous.

## II.

**IN ORDER FOR A PLEA OF GUILTY TO BE CONSTITUTIONALLY FIRM, THE DEFENDANT MUST BE INFORMED OF THE POSSIBLE MINIMUM AND MAXIMUM SENTENCES WHICH MIGHT BE IMPOSED.**

The Appellant cites to *Mallett v. State*, in support of his argument that his guilty pleas were involuntary because he was not correctly informed about the maximum penalties for his crimes and

was not informed at all concerning the minimum penalties. In *Mallett* this Court, without explanation of its rationale, found that the appellant's guilty plea was involuntary because he was not informed of the minimum or maximum sentences which the court could impose for burglary, armed robbery and kidnaping. *Mallett v. State*, 592 So. 2d 524 (Miss. 1991). In *Smith v. State*, 636 So. 2d 1220 (Miss. 1994) this Court examined the record in *Mallett* to gain insight into the reasoning of the Court. Upon examination the Court found that Mallett did not have any assistance from his lawyer, or the judge in helping him to understand the consequences of his guilty plea nor did his lawyer advise him of the penalties on each charge or how much time he would have to serve. The *Smith* Court found that Mallett was never informed there was a mandatory penalty for armed robbery and the trial court did not advise him of any minimum penalties. *Smith v. State*, 636 So. 2d 1220, 1227 (Miss. 1994). In addition, this Court found that Mallett had relied on this omitted information when it quoted Mallett's statement, "had he known that he could have received lesser sentences he would never 'had pled guilty but would have proceed [sic] to trial.'" *Smith*, 636 So. 2d at 1227.

In the case *sub judice*, Seaton did have the assistance of his lawyer in aiding his understanding of what he was doing when he entered his pleas of guilty. Rehfeldt testified that he had read and discussed the plea petition with Seaton and was satisfied that Seaton understood what the petition said and knew what was going on. Seaton argues to this Court that either Rehfeldt correctly explained the minimums and maximums and incorrectly certified the petition or incorrectly explained the minimums and maximums, and Seaton had a terrible misconception of them, on the record, and at the hands of his lawyer. When looking at the petition, paragraph 9 states the maximum punishment for rape is life, for kidnaping is life, and for armed robbery is life. It is true that the petition did not state the minimums and stated the maximum for each crime was life instead of a term of years less than life for the crime of armed robbery if not determined by a jury, and thirty years for kidnaping. It is also true that the trial court did not tell Seaton the minimums when he entered his guilty plea, a clear violation of Rule 8.04 (A)(4)(b). This rule states in relevant part:

> 4. *Advice to the Defendant*. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
>
> b. That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law; . . . .

URCCC 8.04(A)(4)(b).

However, it does not follow that Seaton did not know of the correct minimums as were explained to him by his lawyer before he entered his guilty pleas. Rehfeldt testified at the hearing that he "read each statute to the family in regard to kidnaping, rape and armed robbery." He also testified that he advised Seaton of the minimum on the armed robbery charge and that he told Seaton that he was not sure if there was a minimum on the kidnaping charges but he stated that he looked at the statute before advising him. On cross-exam, Rehfeldt stated," He [Seaton] knew that the minimum for armed robbery was three years and the maximum was life. He knew the minimum and maximum for rape which is no minimum and life for the rape. I am assuming that if I read the Statute I read the entire Statute to him. As to whether or not I can testify here under oath that I told him the maximum penalty fixed by the Judge could only be thirty years and the maximum penalty by jury life, I cannot

tell you that. . . .But as far as claiming that he did not know what he was facing on these charges as the reason to set this aside he knew." When questioned on cross about what he explained to Seaton and his family about parole eligibility for the crime of armed robbery, Rehfeldt explained that he told them the minimum was three years and maximum was either life or six months less than life but he could not say for certain about the maximum. He did testify that he told Seaton if he got three years he would have to serve three and if he got ten years he would have to serve ten, but if he got more than ten then he would only have to serve ten before he would be eligible for parole.

There was considerable testimony by Seaton at the evidentiary hearing both on direct, cross and re-direct as to what Seaton believed to be the minimums and maximums for each offense, including the language of the plea petition that Seaton signed. Seaton testified that although the petition he signed did state his lawyer had informed him of the minimums and maximums, and in open court the judge asked him if he realized he could be sentenced to a term of life, he stated, " at the time I didn't really understand, I was trusting my lawyer."Seaton also testified that he believed that after pleading guilty to all crimes, he expected a sentence of twenty years with fifteen suspended, five to do, and two and one half years until parole based on what he was told by Rehfeldt. In contradiction, Seaton's relatives stated in their affidavits that Rehfeldt told James that if he pleaded guilty that he would be looking at ten to twenty years but he could receive a maximum of thirty years on the armed robbery charge. Contrary to Seaton and his relatives' testimony, Rehfeldt stated in his affidavit that he advised Seaton and his family on several occasions what Seaton would be facing if he went to trial, and prior to his entry of the guilty plea he again advised Seaton and his family about the minimum and maximum penalty for each charge. Further, Rehfeldt testified that after the open plea but before the actual sentencing he believed there was a pre-sentence report that he went over with the family. He testified that after they tried to pin him down as to what sentence Seaton would get he told them it was his personal belief that he would get somewhere between fifteen and twenty years before he will be eligible for parole. It was at this time that Rehfeldt testified that he talked to the family about parole eligibility.

This Court categorizes these types of voluntariness cases into two different fact patterns:

> 1. The sentence which the accused was informed would be his sentence if he plead guilty was erroneous and he acted in "reliance" on that information, but the mandatory minimum sentence which was imposed was harsher, or there was a misstatement by the court or the defense attorney as to the applicable minimum sentence. ***Nelson v. State***, 626 So. 2d 121 (Miss. 1993); ***Washington v. State***, 620 So. 2d 966 (Miss. 1993); ***Alexander v. State***, 605 So. 2d 1170 (Miss. 1992); ***Myers v. State***, 583 So. 2d 174 (Miss. 1991); ***Baker v. State***, 358 So. 2d 401 (Miss. 1978); or,

> 2. No representation of a minimum sentence was made, but the accused "expected" a much less severe sentence. ***Vittitoe v. State***, 556 So. 2d 1062 (Miss. 1990).

***Smith***, 636 So. 2d at 1226-27. The appellant argues that he falls in the second category by claiming that he was lied to about what he could get. In support of this he inserts part of the transcript of the taking of the plea where Judge Toney addressed the defendant. The transcript reveals that the trial court informed Seaton and Seaton affirmatively acknowledged that the maximum penalty that the court may impose on him for the crimes of rape, kidnaping, and robbery is life in prison for each of

the four counts and that he may stand trial and be convicted of these charges but yet not be sentenced to the maximum. However, the transcript is devoid of any mention about minimum sentences. The following exchange occurred that is relevant to this discussion:

Q. Do you have any complaints at all about the way Mr. Rehfeldt has represented you?

A. No, sir.

Q. Mr. Seaton, do you understand that the maximum penalty that the Court may impose on you for the crime of rape is life in prison?

A. Yes, sir.

Q. Do you understand that the maximum penalty that the Court may impose on you for the crime of kidnaping is life in prison?

A. Yes, sir.

Q. Do you understand that the maximum penalty the Court may impose on you for the crime of armed robbery is life in prison?

A. Yes, sir.

Q. Do you also understand that -- that you may stand trial and be convicted of these charges but yet not be sentenced to the maximum? Do you understand that?

A. Yes, sir.

Q. Do you also understand that if you stand here today and plead guilty to these charges that you may be sentenced to serve a term of life in prison --

A. Yes, sir.

Q. -- on each count?

A. Yes, sir.

Q. Mr. Seaton, do you understand that you have been charged by indictment with two counts of kidnaping?

A. Yes, sir.

Q. Do you understand that the maximum penalty that may be imposed on each count is a life term in prison?

A. Yes, sir.

Q. Mr. Seaton, has anyone tried to promise you any favors or inducements or any hope of reward in order to get you to enter these pleas of guilty?

A. No, sir.

Q. Has anyone tried to force you or threaten you or intimidate you into pleading guilty?

A. No, sir.

This Court in a series of decisions has recognized that a failure by the circuit court to assure that the defendant is aware of the maximum and minimum sentence does not, by itself, render a guilty plea involuntary. *Sykes v. State,* 624 So. 2d 500, 503 (Miss. 1993) (failure to advise defendant of minimum fine was harmless error); *Banana v. State*, 635 So. 2d 851, 855 (Miss. 1994) ("trial court's error in failing to comply totally with Rule 3.03 [now Rule 8.04] is purely technical and is at best harmless error" where no showing that defendant's alleged ignorance of minimum sentence was basis for guilty plea, distinguishing *Vittitoe v. State*, 556 So. 2d 1062 (Miss. 1990)); *Smith*, 636 So. 2d at 1226-27 (no error in denying P.C.R. motion without evidentiary hearing where trial court failed to advise defendant of minimum mandatory sentence for armed robbery, but there was no showing of "reliance" or "expectation", distinguishing *Nelson v. State*, 626 So. 2d 121 (Miss. 1993) and *Vittitoe*) ; *Gibson v. State*, 641 So. 2d 1163 (Miss. 1994) (failure to advise defendant of maximum sentence does not automatically invalidate plea; failure to advise of maximum and minimum sentences was harmless error); *Simpson v. State*, 678 So. 2d 712, 715 (Miss. 1996) (no error in failing to advise defendant of "minimum" for conspiracy, since there is no statutory minimum for conspiracy, but even if statute carried a minimum, there would be no reversible error, since failure to advise of minimum played no role in decision to plead guilty. "Automatic invalidation of a guilty plea is not the rule in Mississippi.").

The State admits there may have been a technical non-compliance with the requirements for advice to the defendant, but it argues there was no showing of "reliance" and thus no showing that the plea was other than voluntary, as the circuit court found after an evidentiary hearing was held. The only language in the record that could be construed to show reliance is Seaton's statement at the evidentiary hearing that had he known of the true minimums and maximums for each offense he would not have entered his guilty plea. The lower court relied in part on the language of this Court in *Gaskin v. State*, which states as follows:

> It [the State] further notes that the Mississippi Supreme Court indicated in *Vittitoe v. State* that the presumption of prejudice from failure by the judge to inform a defendant of sentencing requirements may be rebutted by evidence that the defense counsel informed the defendant of such requirements or that defendant had received such information from other sources. 556 So. 2d at 1064-1065.

> It is true as Defendant contends that the trial judge misinformed him that the maximum penalty for armed robbery is life, when in fact the maximum sentence without a jury recommendation is a definite term of years less than life. Gaskin's plea petition does reflect, though , that he was advised by his counsel of the floors and ceilings for these crimes. Further, Gaskin received the exact sentence that the State told him it would recommend. That sentence included a forty-year sentence for armed robbery, which is a definite term less than life. Any failure to distinguish between the sentence that a jury could mete out and that the court could render is certainly harmless. Therefore, applying *Vittitoe*, we find no reversible error on this ground.

*Gaskin v. State*, 618 So. 2d 103, 108 (Miss. 1993) The lower court further stated that it is "highly

probable that the Defendant and his Counsel were both surprised and disappointed with the sentences." However, it addressed this issue in the Order where it based its decision that Seaton's pleas were freely, voluntary, and intelligently made in part on the language of *Sanders v. State,* which reads:

> We emphasize that a mere expectation or hope, however reasonable, of a lesser sentence than might be meted out after conviction upon trial by jury will generally not be sufficient to entitle a petitioner to relief in cases such as this. *Yates v. State*, 189 So. 2d 917 (Miss. 1966). Likewise, the generalized prediction of defense counsel that a lesser sentence is likely upon a plea of guilty is in and of itself insufficient to entitle petitioner to relief.

*Sanders v. State*, 440 So. 2d 278, 287 (Miss. 1983) (superseded by statute on other grounds.[1]) *See also*, *Meyers*, 583 So. 2d 174, 177 (Miss. 1991) (making the distinction between "generalized prediction" or mere expectation or hope of lesser sentence and "firm representation" of a lesser sentence on plea of guilty).

Considering all the facts, the relevant case law and the standard of review to which this Court must adhere, this Court concludes that the lower court's finding that Seaton's pleas were freely, voluntarily and intelligently made was not clearly erroneous. Although the lower court did not specifically state that it found that Seaton had been informed properly of the minimum and maximum penalties for each offense it did apparently determine that it was harmless error and that it did not render his plea involuntary. Therefore, this Court affirms the lower court on this assignment of error.

### III.

### WAS COUNSEL INEFFECTIVE?

A claim for ineffective assistance of counsel is judged by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted by this Court in *Stringer v. State*, 454 So. 2d 468 (Miss. 1984). Seaton must show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Stringer*, 454 So. 2d at 477. This standard also applies to challenges to guilty pleas. *Coleman v. State*, 483 So. 2d 680, 683 (Miss. 1986); *Roland v. State*, 666 So. 2d 747, 750 (Miss. 1995). The defendant has the burden of satisfying both prongs of the test. *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993). If either part of the test is not satisfied then the claim must fail, and therefore if Seaton can not prove that Rehfeldt's representation was deficient then the inquiry must end.

Seaton alleges that he received ineffective representation by counsel and that such induced him to enter a plea of guilty which was not voluntary. Specifically Seaton asserts that counsel (1) failed to investigate the case, (2) failed to file motions, (3) failed to seek discovery, (4) coerced him into pleading guilty by terrifying him with the prospect of the death penalty, and (5) failed to advise him of the maximum and minimum sentences. The first three assertions were factually disputed and testimony was taken on these issues at the evidentiary hearing. Although there is some dispute between Rehfeldt and Seaton as to what investigation took place prior to Seaton's entry of his guilty pleas, Rehfeldt testified at the evidentiary hearing held on Seaton's post-conviction relief motion that he talked to the victim as well as John Kitchens with the D.A.'s office, and thereafter decided to waive the preliminary hearing. Rehfeldt further testified that he talked to Richard Flood, the attorney

for Jones, both the police officers at the Jackson Police Department and at the Ridgeland Police Department and Beth Davis, the public defender in Hinds County who had originally talked to Seaton. Rehfeldt stated that he also received discovery from the District Attorney's office which included Seaton's confession, the reports, the lab reports on the woman and child and admissions from the bank where the victim was taken to get money out of an ATM machine. Seaton, on the other had testified that Rehfeldt failed to do any investigation since Rehfeldt never gave him copies of anything nor discussed with him any testimony from any witnesses. According to Rehfeldt, he advised Seaton's family and his client to plead guilty after he discovered that Jones, the co-defendant, had decided to enter an open plea and agreed to testify against Seaton.

Seaton asserts on appeal that the lower court did not determine if it believed Seaton's denial that Rehfeldt ever showed him any information or if it believed Rehfeldt when he testified that he had interviewed the victim, received documents and investigative reports from the police, and reviewed the District Attorney's evidence file prior to the entry of the plea. Although the Order does not address this specific finding by the lower court, this Court has stated, "If a trial court sitting without a jury fails to make some specific findings of fact, this Court will infer that such findings were resolved in favor of the Appellee." *Schmitt*, 560 So. 2d at 151 (*citing Pace v. Owens*, 511 So. 2d 489, 491-92 (Miss. 1987)). Since the lower court determined that Seaton's plea was freely, voluntarily, and intelligently given, then this Court assumes the lower court found Rehfeldt's testimony to be more credible since that finding supports its judgment. Therefore, as to the first three assertions this Court finds that Rehfeldt's representation was not deficient.

The last two assertions have already been fully discussed. This Court upholds the lower court's finding that Seaton's claim that his lawyer told him that if he went to trial he could receive the death penalty was conclusively rebutted by the testimony of Rehfeldt. Therefore, as to this claim Rehfeldt's representation was not deficient. Lastly, as to what Rehfeldt told Seaton about the maximum and minimum penalties he could receive for each offense, the transcript of the evidentiary hearing is full of testimony from Rehfeldt explaining how he did advise Seaton of the penalties he could face. Based on the judgment of the lower court, it must have believed Seaton had been so advised by his attorney and the failure of the trial court to address the minimum penalties for each offense was harmless error and did not affect Seaton's decision to plead guilty to the crimes which he was accused of committing. When considering the deference that this Court is required to give to the fact-finding of the lower court, this alleged deficient performance is without merit.

Consequently, since Seaton has failed to prove that his attorney's representation was deficient in any way it is unnecessary for this Court to consider whether any prejudice to Seaton resulted from any of these alleged deficiencies. This Court holds that Seaton's claim for ineffective assistance of counsel lacks merit and must fail.

## CONCLUSION

Seaton's claim that his plea was not voluntary must fail. The factual determinations the lower court made in order to reach this result were not clearly erroneous. Even if the trial court failed to inform Seaton of the minimum penalties for each offense and arguably incorrectly stated the maximum penalties, the lower court must have found and this Court finds it to be harmless error since he was correctly informed by his attorney prior to the entry of his guilty pleas. The lower court's finding,

after a full evidentiary hearing was granted, that Seaton's guilty pleas were freely, voluntarily, and intelligently made and entered is not clearly erroneous. The lower court properly denied Seaton's motion for post-conviction relief and this Court affirms the lower court's denial.

**LOWER COURT'S DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. This case was superseded by the Post-Conviction Relief Act because in *Sanders v. State*, the court states the burden of proof on the defendant is by clear and convincing evidence where the statute mandates the proper burden of proof is by preponderance of the evidence.