# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00724-SCT

*JEFFREY LANCE HILL a/k/a JEFFREY L. HILL*
*a/k/a JEFF HILL a/k/a JEFFREY HILL a/k/a*
*JEFFREY SCOTT HILL a/k/a JEFFREY L. HILL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2012 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 02/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Jeffrey Lance Hill was indicted by an Oktibbeha County grand jury of possession of

a firearm on educational property (the campus of Mississippi State University) in violation

of Mississippi Code Section 97-37-17(2) (Rev. 2006).  In two jury trials,  Hill represented

himself with the assistance and advice of court-appointed counsel.  Hill's first trial resulted

in a hung jury.  Hill was found guilty of the indicted offense in his second trial and was

sentenced to three years in the custody of the Mississippi Department of Corrections (MDOC) and ordered to pay a $1,200 fine. The trial court denied Hill's post-trial motion for a new trial or, in the alternative, judgment notwithstanding the verdict (JNOV). This appeal followed.

¶2. Hill challenges his conviction based on the following two issues: (I) Whether Hill's right to counsel and a fair trial under the Sixth Amendment was violated when the trial court refused to allow Hill's court-appointed counsel, Stephanie Mallette, to withdraw; and (II) whether the trial court erred when it failed to grant Hill's motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence.

¶3. Finding error as to the first issue, we reverse Hill's conviction and remand the case to the trial court for a new trial. We decline to address the second issue concerning whether the verdict was against the overwhelming weight of the evidence.

**FACTS**

¶4. In September 2010, the Mississippi State University Police Department received a report that Hill possibly was in possession of a firearm at Aiken Village Apartments on the campus of Mississippi State University. The department sent Detective Steve Westbrook and two other officers to investigate the report. When the officers arrived at Hill's apartment, Hill's roommate allowed them to enter. Once the officers were inside, Hill entered the room and spoke with the officers. Out of concern for officer safety, Westbrook asked Hill if there were any weapons in his bedroom, and Hill responded that he had a rifle in his closet. Westbrook and Hill retrieved the weapon together. Hill was then arrested for having a

2

firearm on campus property. Hill told the officers that he had no other firearms, but that he had had ammunition in his vehicle.

¶5.     Hill's first trial in January 2012 resulted in a hung jury. Hill's second trial in May 2012 resulted in a conviction of the charged offense. Hill chose to represent himself at both trials with the assistance of court-appointed advisory counsel, Stephanie Mallette. The result of the second trial is the only matter before us.

¶6.     There was no dispute that Hill was in possession of a World War II Era Russian Mosin Nagant rifle, in working condition, and 440 rounds of ammunition, while living at the Aiken Village Apartments. Hill's defense at trial centered completely on his belief that Aiken Village Apartments were not located on the campus of Mississippi State University (MSU).

¶7.     During its case-in-chief, the State displayed a campus map and established that Aiken Village Apartments were represented on the map. The State introduced Vicky Gallegos, the Housing Assignment Specialist for MSU Housing and Residence Life, who explained that any student obtaining housing through the university must go online, access his personal student account with his student ID and password, read the housing contract and terms and conditions, then select that the terms have been read and agreed to. Further, the student is instructed to read the "Rules and Regulations" and "Prohibited Items" sections of the web page, which includes the instruction that no firearms, ammunition, and other forms of weapons are allowed on any part of the campus, including student housing. The State admitted evidence demonstrating how these rules were displayed to the student. Gallegos

3

confirmed that Hill could not have applied for housing without reading and acknowledging these rules and that the university received electronic confirmation when Hill acknowledged the terms and regulations. She also provided that the documents explain the complete applicability of the rules to overflow housing.

¶8. On cross-examination, Hill sought to show that he was never given a housing contract that specifically stated that Aiken Village Apartments were part of the overflow accommodations or that the apartments were owned by the university. Testimony revealed that Hill was asked by the university and consented to being moved to an overflow accommodation. Exhibits were entered into evidence indicating that Hill had signed his inventory form for Aiken Village, which displayed the university's name on the form. Also revealed was the fact that Hill's housing costs were paid from Hill's student account with the university. Photos also were introduced showing the apartment's sign including the term "University Housing."

¶9. Hill testified at trial to his belief that he did not live on university property by the fact that the apartments had a Starkville, Mississippi, mailing address, unlike residence halls, which have a Mississippi State, Mississippi, address, with different zip codes. Among other reasons, Hill claimed the apartments did not have the strict parking signs seen on campus, yet he had received a parking ticket for not having a parking decal. He also stated that Aiken Village appears to be outside of campus because he passed the ten-foot wall displaying "Mississippi State University" en route to the apartments, which gave him the impression that he was exiting the campus. Further, he explained that he knew firearms were prohibited

4

on campus, so he had never before brought the rifle from his home in Arkansas until he moved into Aiken Village because of his belief that he was not on university property. Hill stated that he had obtained the rifle for hunting, but testimony from Detective Westbrook confirmed that Hill did not have a hunting license.

¶10. Also during the trial, it became known for the first time that a confidential informant originally had alerted the police about Hill's possible possession of the firearm. Once the existence of a confidential informant became known, Mallette argued to the trial court the validity of keeping the informant's identity and statement confidential. Mallette also raised the issue of a discovery violation, since the existence of the informant never before had been mentioned. The State responded that it did not have to reveal the identity of the informant, because Detective Westbrook was the eyewitness to the crime. Prior to the incident, the informant merely had reported to authorities that Hill was possibly in possession of a firearm. After much debate, the trial court ultimately ruled that no discovery violation had occurred and ordered that the police report be provided to the defense after any information regarding the identity of the informant had been redacted. The trial court ordered that a nonredacted copy would be preserved for the record under seal. The State, however, failed to properly redact a portion of the report that was given to Mallette, thereby revealing to Mallette that the informant was Hill's roommate.

¶11. Afterward, Mallette moved the trial court to allow her to withdraw from representing Hill. The trial court heard Mallette's motion in chambers, on the record. Mallette told the trial court that she could not fulfill her ethical obligation to Hill and as well as her ethical

5

obligation to the trial court not to reveal the informant's identity as Hill's roommate. She said she would have advised Hill to call his roommate as a witness, had she been given the report before the trial began. Mallette also explained that Hill previously had consulted with her about when to rest his case, and she was concerned that if he asked her again she would have to advise him to move for a mistrial in order to call the roommate as a witness.

¶12. At that point, the trial court considered appointing new advisory counsel, and called in another public defender, Mark Williamson, to represent Hill through the end of trial. The trial court informed Williamson of the conflict that had arisen in Mallette's representation of Hill, and informed him of what his role would be as Hill's advisory counsel. Williamson informed the trial court that his first advice for Hill, as his attorney, would be to ask for a mistrial, because he could not act as Hill's advisory counsel knowing nothing about the case. The court then instructed Mallette that she would remain as advisory counsel and that she should inform Hill that, because of a conflict, she could not advise him on whether to rest his case, if he asked her that specific question.

¶13. The State proceeded to call one rebuttal witness, and after cross-examination by Hill, both sides rested. Thereafter, the jury found Hill guilty of possessing a firearm on educational property.

## ANALYSIS

**I.      Whether Hill's right to counsel and a fair trial under the Sixth Amendment was violated when the trial court refused to allow Hill's court-appointed advisory counsel, Stephanie Mallette, to withdraw.**

6

¶14.    Hill argues that the trial court's actions materially interfered with his defense counsel's ability to provide loyal assistance to him. Hill further contends that the trial court's decision not to relieve Mallette from her duty to assist Hill was based in large part on the trial court's disagreement with the advice that Williamson proposed to give to Hill–to ask for a mistrial. Thus, the trial court deprived him of his right to a fair trial. We agree.

¶15.    The trial court has complete discretion when considering a motion to withdraw as counsel. *Rubenstein v. State*, 941 So. 2d 735, 783 (Miss. 2006) (citing *Taylor v. State*, 435 So. 2d 701, 703 (Miss. 1983)). *See also Myers v. State*, 254 So. 2d 891, 898 (Miss. 1971). Limitations must be enforced when considering appointing new counsel to circumvent any maneuvers that interfere with the "orderly procedure in the courts or . . . the fair administration of justice." *Rubenstein*, 941 So. 2d at 783 (citing *Taylor*, 435 So. 2d at 703 (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir. 1963))).

¶16.    On appeal, Hill contends that the denial of Mallette's motion to withdraw deprived him of his Sixth Amendment right to counsel, thus, an unfair trial resulted.[1] We fully agree with the concurring opinion and its conclusion that Hill's constitutional rights to assistance of counsel and self-representation were originally jeopardized originally when Mallette was granted her request to withdraw as counsel because of a conflict of interest but

[1]It is unnecessary to address the dissent's concern as to whether a Sixth Amendment right to advisory counsel exists, as that issue is not before us. However, we stress that, even though the trial court appoints counsel in an advisory capacity, such counsel is still obligated to provide the defendant with adequate assistance in accordance with the defendant's requests.

7

simultaneously was assigned to remain in an advisory-counsel capacity. Additionally, we find error in the trial court's later ruling requiring Mallette to remain as Hill's advisory counsel when her obligations to the trial court and her obligations to Hill were in conflict.

¶17.    The record shows, as mentioned, that there was no dispute at trial that Hill was in possession of a firearm while on educational property in violation of Section 97-37-17(2). Hill's defense throughout trial was that he did not know he was on educational property. During Hill's cross-examination of Westbrook, while bringing out that defense, information came to light that Westbrook and the other officers had come to Hill's apartment the day Hill was arrested based on a report from an informant. When Hill asked Westbrook the informant's name, the State objected on the ground that the informant's name was confidential. Lengthy debate between Mallette and the State ensued with regard to Mississippi's discovery requirements in criminal proceedings. Ultimately, the trial court found no discovery violation.

¶18.    We agree with the trial court's ruling that revealing the identity of the confidential informant to Hill was not required. *Read v. State*, 430 So. 2d 832 (Miss. 1983) (court did not require disclosure of confidential informant who did not participate in the crime in any way but had seen the drugs at the residence and had reported to the police); *see also Corry v. State*, 710 So. 2d 853, 858-59 (Miss. 1998) (finding no manifest error in trial court's decision to deny defendant's motion to require disclosure of informant's identity, because no evidence showed that the informant had participated in the crime or was an eyewitness to the crime); *Esparaza v. State*, 595 So. 2d 418, 424 (Miss. 1992) (informant who did not

8

witness the offense charged and did not serve as a witness in the proceeding, but merely provided data that established probable cause to support a search warrant, constituted too tenuous a link to justify, under Mississippi law, disclosing the informant's identity); *Arnett v. State*, 532 So. 2d 1003, 1008 (Miss. 1988) ("There is no evidence in the record that the informant was a participant or an eyewitness to the crime, and consequently disclosure of the witness was within the sound discretion of the trial judge. . . .").

¶19.    As mentioned before, Mallette felt conflicted because she inadvertently had learned the informant was Hill's roommate. Since the trial court ultimately ruled that the identity of the confidential informant could not be revealed to Hill, Mallette felt her obligations to the trial court and her obligations to Hill were now in conflict because the trial court was restricting her from instructing Hill to move for a mistrial, rather than resting his case, in order to call his roommate as a witness.

¶20.    By instructing Mallette to refrain from counseling Hill on whether to rest his case, the trial court effectively left Hill without any type of counsel, advisory or otherwise. In *Howard v. State*, this Court concluded that advisory counsel's role in aiding the defense included "among other things, the necessity of preparing as adequately as possible to assume a more active role in the trial, should the need arise." *Howard v. State*, 701 So. 2d 274, 285 (Miss. 1997). The defendant in *Howard* communicated to both standby counselors that he wanted them to present the closing arguments. *Id*. The trial judge ruled that standby counsel should prepare jury instructions, but that it was too late in the trial for them to begin arguing the case. *Id*. This Court pointed to the fact that the trial court had instructed Howard to use

9

and rely upon the appointed standby counselors, even though he was representing himself, only to deny him the assistance the trial court had so encouraged. *Id*. This Court cited *McKaskle v. Wiggins*, in which the United States Supreme Court provided the following guidance:

> Once the *pro se* defendant invites or agrees to participation by counsel, any subsequent appearances by counsel must be presumed to be within the defendant's acquiescence, at least until the point that the defendant expressly and unambiguously renews his request that counsel be silenced.

*Howard*, 701 So. 2d at 287 (*citing McKaskle*, 465 U.S. 168, 183, 104 S. Ct. 944, 953-54, 79 L. Ed. 2d 122 (1984)).

¶21.    Here, the trial court repeatedly attempted to convince Hill to seek assistance from Mallette, then later instructed Mallette to refrain from counseling Hill on whether to rest his case, because she had stated that she would counsel Hill to move for a mistrial in order to secure Hill's roommate as a witness.

¶22.    We must be clear that the roles and responsibilities of "full-fledged counsel" and advisory counsel are different and are not one and the same with regard to the protections of the Sixth Amendment right to counsel. *U.S. v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991).

¶23.    However, a problem arises when a defendant initiates the assistance of counsel and subsequently is denied such assistance. *McKaskle*, 465 U.S. at 183. As previously mentioned, Hill communicated to Mallette that he wanted her assistance on whether to rest his case. Thus, it is clear from the facts of this case that Hill had requested her full assistance on the matter. *Id*. The Mississippi Constitution states in part that " . . . the accused shall

10

have a right to be heard by himself or counsel, or both . . . ." ***Metcalf v. State***, 629 So. 2d 558, 562 (Miss. 1993) (*citing* Miss. Const. art 3, § 26 (1890)). We must recognize the importance of reaching a balance between two imperative rights: the right of self-representation and the constitutional right of representation by counsel. ***Metcalf v. State***, 629 So. 2d at 562.

¶24. We find that the trial court erred by assigning Mallette as Hill's advisory counsel while, at the same time, allowing her to withdraw as his counsel because of a conflict of interest. The trial court again erred when Mallette was required to remain as advisory counsel once a conflict arose between her duty to the court and her duty to Hill.

## CONCLUSION

¶25. This Court reverses Hill's conviction for possession of a firearm while on educational property, and remands the case to the Oktibbeha County Circuit Court for a new trial consistent with this opinion.

¶26. **REVERSED AND REMANDED**.

**WALLER, C.J., DICKINSON, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. KITCHENS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.**

**KITCHENS, JUSTICE, CONCURRING:**

¶27. Our constitutional guarantees that the accused have assistance of counsel require reversal of Hill's conviction. Thus, I concur with the disposition. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of

11

counsel for his defense."); Miss. Const. art. 3, § 26 ("In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both . . . ."). The Court correctly finds that a conflict of interest arose during trial and that Hill's court-appointed counsel, Stephanie Mallette, should not have been appointed as standby counsel. However, the trial court already had determined, well before the second trial began, that Mallette had a conflict of interest justifying her removal from the case. Still, despite recognizing her divided loyalties, the trial court required her to continue as Hill's advisor. Whether her role was "full-fledged" counsel, standby counsel, or somewhere in between is immaterial, for any degree of legal advice requires absolute loyalty to the client. *See Kiker v. State*, 55 So. 3d 1060, 1065 (Miss. 2011) ("Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.") (quoting *Littlejohn v. State*, 593 So. 2d 20, 22 (Miss. 1992)). Once the Court determined that there was an actual conflict of interest, Hill was entitled to the appointment of substitute counsel. *Id.* at 1066 (citing *Littlejohn*, 593 So. 2d at 25). Because Hill was not given the option of court-appointed, conflict-free counsel, I concur with the Court's reversal of his conviction.

¶28. Generally, a trial judge enjoys discretion when considering an attorney's motion to withdraw. *See e.g., Rubenstein v. State*, 941 So. 2d 735, 783 (Miss. 2006). Likewise, this Court applies an abuse of discretion standard of review to denials of defendants' requests to discharge counsel. *Rinehart v. State*, 883 So. 2d 573, 576 (Miss. 2004). But this discretion is not absolute, for our courts always must apply the correct legal standards. *See e.g.*, *Freeman v. State*, 121 So. 3d 888, 894-95 (Miss. 2013) (in contrast to findings of fact,

12

questions of law are reviewed *de novo*) (citing ***City of Laurel v. Williams***, 21 So. 3d 1170, 1174 (Miss. 2009)). Although Court approval is required before appointed counsel may be relieved of his or her representation, a conflict of interest, once recognized by a court, *requires* the trial court to remove the conflicted attorney. ***Hayden v. State***, 972 So. 2d 525, 536 (Miss. 2007). The lower court did not apply this legal standard, and this error is clearly reflected in the record before us.

¶29. Hill's first court-appointed attorney was allowed to withdraw after Hill had filed a bar complaint and accused that attorney of attempting to "sabotage" his case.[2] Mallette was appointed in that lawyer's stead, and Hill continued to file various *pro se* motions and letters, as he had from the beginning of the case. The first trial was set for January 31, 2012, and on January 9, 2012, he filed several documents with the circuit court, including a letter indicating that he was "firing" his attorney. In the letter, Hill made numerous accusations against Mallette, alleging, among other things, that she had filed motions on his behalf without his consent, that she had refused to interview his witnesses,[3] and that she had

---

[2]Hill's first lawyer was the same attorney who was asked to serve as Mallette's replacement during the second trial. Thus, he was not eligible to serve in Mallette's place.

[3]In fact, the trial court previously had determined that "the Defendant wanted two witnesses called at his trial with whom [Mallette] had a *conflict of interest* precluding her from contacting the witnesses and interviewing them." (Emphasis added.) The order then appointed another attorney, Marty Haug,

> with the limited responsibility to interview [the two witnesses] and report to Ms. Mallette the substance of their testimony should either be called as witness. Should either be called as a witness [Haug] will be responsible for examining the witness(es). Ms. Mallette is ordered to turn over a copy of all

13

allegedly accused him of murdering two men. As with his request that his first attorney be discharged, Hill did not state that he wished to proceed *pro se*. Instead Hill wrote, "I will not be seeking another public defender. I choose to seek my own counsel."

¶30. On January 25, 2012, Mallette requested that she be allowed to withdraw and that Hill be permitted to obtain his own counsel. Her motion cited a personal conflict of interest based on the letter's accusations and Hill's having filed a complaint against her with the Mississippi Bar. The trial court granted Mallette's motion in an "Order Allowing Withdrawal." The order noted that there had been a hearing on the matter and announced that Mallette "is withdrawn from her representation of [Hill]." Yet, the very next sentence read, "Stephanie Mallette is hereby appointed to represent Jeffrey Lance Hill as standby counsel and assist him with legal and procedural matters ~~when he requests~~ as necessary pursuant to Rule 8.05 of the U.R.C.C.C.P."[4]

¶31. The order ostensibly granting Mallette's motion to withdraw and then appointing her as standby counsel was entered on January 31, 2012, the day of Hill's first trial, and the

---

discovery materials provided by the State of Mississippi as well as to assist [Haug] with the substance of the potential witnesses.

Thus, despite Mallette's conflict, the order appeared to require Mallette's direct participation in the matter as she was required to "assist [Haug] with the substance of the potential witnesses." The record does not reveal the nature of Mallette's conflict; but the order raises questions as to whether her inability to interview certain witnesses would have disqualified her from further representation.

[4]The trial judge had crossed out the phrase "when he requests." He replaced that phrase with "as necessary," and initialed the alteration.

sequence of events that day is unclear. There are no transcripts in the appellate record related to these first proceedings, including the hearing on Mallette's motion to withdraw. That same day, the trial court entered an order declaring a mistrial, noting that "the Defendant appeared in open Court representing himself to answer the indictment." The order did not mention Mallette, and there is no reference that Hill had been given standby counsel. In other words, it is impossible to determine the extent of Mallette's participation in the first trial, if any. The record does not reflect a request from Hill to exercise his right to self-representation in his first trial, and there is no documentation that Hill "knowingly and voluntarily" waived his right to counsel.

¶32. Although Hill is appealing the conviction from his second trial, the proceedings related to the first trial certainly bear upon the question of whether he "validly waived his right to counsel." The second trial began with the trial court's cautioning Hill about the pitfalls of self-representation and reminding Hill that he could reconsider his prior decision(s) to proceed *pro se*. Hill also was given the warnings set forth in Rule 8.05 of the Uniform Circuit and County Court Rules and outlined in ***Faretta v. California***, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975),[5] and Hill responded affirmatively when the trial judge asked him whether he still wished to exercise his right to self-representation.

---

[5]"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." ***Id.***

¶33.    Nevertheless, the trial court's "Order of Withdrawal," appointing Mallette as standby counsel despite a conflict of interest, still was in effect at the second trial.  Even if Hill could have waived the conflict, nothing in the record indicates that the conflict was explained to Hill or what impact it may have had on Mallette's ability to provide appropriate representation.  Rule 8.05 provides general guidelines, but also requires the court to inform the defendant of "other matters as the court deems appropriate."  A conflict of interest falls in this category.  This Court has adopted the generally accepted rule that "[i]n order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant . . . indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *Littlejohn*, 593 So. 2d at 25 (quoting *United States v. Alvarez*, 580 F.2d 1251, 1260 (5th Cir. 1978)).

¶34.    The judge assured Hill that he had a constitutional right to defer to standby counsel at any point and to allow Mallette to take on "whatever role he desire[d]."  During the trial, Hill clearly relied on these assurances, frequently consulting Mallette and asking/permitting her to argue the merits of crucial objections.  At times, the trial judge instructed Mallete to participate actively in Hill's defense while instructing Hill to remain silent and speak through *his* attorney.  Thus, Mallette's role at trial was not limited to standby counsel, and  her involvement was more akin to one acting as "co-counsel."  *See Metcalf v. State*,  629 So. 2d 558, 562 (Miss. 1993) (noting that "hybrid representation" is a "middle ground" serving "to

16

strike a balance between the right to counsel and the right to self-representation."). Her expanded role at trial only compounded the error made when the court determined that Mallette had a conflict of interest but did not remove her from the case.

¶35.    By their very nature, our constitutional guarantees of due process of law and the right to counsel encompass the right to conflict-free representation and undivided loyalty. *See e.g.*, *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 481, 98 S. Ct. 1173, 1177, 55 L. Ed. 2d 426 (1978)); *Kiker v. State*, 55 So. 3d 1060, 1066 (Miss. 2011) (citing *Littlejohn v. State*, 593 So. 2d 20, 23 (Miss. 1992); *Armstrong v. State*, 573 So. 2d 1329, 1331 (Miss. 1990)).  It is evident from the record that Hill's constitutional rights to assistance of counsel and/or self-representation were compromised before his first trial had begun.  U.S. Const. amend VI; Miss. Const. art. 3, § 26.  The trial court twice required Mallette to continue representation, despite conflicts of interest.  Although the trial court followed the narrative provided in Rule 8.05, without an explanation and waiver of the conflict, Hill could not "knowingly and voluntarily" exercise his right to self representation.  URCCC 8.05. Hill could not have made an informed and intelligent decision to waive his right to counsel, because Hill was not given the option of being defended by conflict-free counsel.  Having determined that Mallette had a conflict of interest warranting her removal from the case, the trial court erred by appointing her as standby counsel.  The error was compounded when the trial court encouraged, and sometimes

17

required, that Mallette participate as "hybrid counsel." Accordingly, I would reverse the judgment of conviction based on a conflict that had existed long before trial began.

**WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.**

**COLEMAN, JUSTICE, DISSENTING:**

¶36. I find persuasive the reasoning of several courts that have held that a criminal defendant has no Sixth Amendment right to advisory counsel after validly waiving his right to counsel at trial. *See U.S. v. Singleton*, 107 F.3d 1091, 1102 (4th Cir. 1997); *U.S. v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996); *People v. Brante*, 232 P.3d 204, 208 (Col. App. 2009); *People v. Gordon*, 166 Cal. Rptr. 809, 814 (Cal. App.1980); *State v. Clark*, 722 N.W.2d 460, 466 (Minn. 2006); *State v. Gonzales*, 181 Ariz. 502, 510, 892 P.2d 838, 846 (1995). Hill, not his advisory counsel, "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).

¶37. I am not, as the majority suggests, concerned with *whether* Hill has a Sixth Amendment right to advisory counsel. He does not. My concern is with the effect of the absence of a Sixth Amendment right to advisory counsel on the majority's attempt to find a violation of the nonexistent right. Perhaps one appointed as advisory counsel could give bad advice to a client – even awful advice. However, the majority does not adequately explain how – even if Hill has shown a failure of his advisory counsel to render good advice – the

18

purported failure of advisory counsel rises to the level of a Sixth Amendment violation when Hill clearly and on the record waived his Sixth Amendment right to counsel.

¶38. Because I cannot agree with the logic of the majority in predicating its holding on the violation of a Sixth Amendment right to advisory counsel that does not exist, I respectfully dissent.

**RANDOLPH, P.J., JOINS THIS OPINION.**